# United States District Court
# Southern District of Texas

## Case Number: 03mc386

## ATTACHMENT

Description:

☐ State Court Record          ☑ State Court Record Continued

☐ Administrative Record

☑ Document continued - Part 112 of _____

☐ Exhibit to: _____
　　　　　　 number(s) / letter(s) _____

Other: _____

_____

_____

Vol. 7 of 7

No.

CCRA No. 72810

DUANE EDWARD BUCK
Appellant

Offense

Punishment

County

MOTION FOR

REHEARING IS _____ 19___

_____ JUSTICE

Trial Court
Trial Court No.
Trial Judge
Disposition
Date
Justice _____ P.C. ___ S
Panel _____ Quarter _____ En Banc
S/F Vols. 26-30
St. B.
Ap. B.
Supp. Tr.
Supp. B.
Pro Se.
On Pdr.
Pdr Filed
Response
Brief
S. Brief

CAUSE NO. **72810**
IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

DUANE EDWARD BUCK

Appellant

VS.

THE STATE OF TEXAS,

Appellee

TRIAL CAUSE NO. 699684
APPEAL FROM THE 208TH DISTRICT COURT
OF HARRIS COUNTY, TEXAS
JUDGE DENISE COLLINS, PRESIDING

REPORTER'S RECORD

PUNISHMENT

May 6, 1997

FILED IN
COURT OF CRIMINAL APPEALS

JAN 5 - 1998

Troy C. Bennett, Jr., Clerk

VOLUME   28   OF   30   VOLUMES

MARILYN SKINNER
Certified Official Court Reporter
208th District Court
Harris County, Texas

# CHRONOLOGICAL INDEX

PAGE

VOLUME 28 - PUNISHMENT, MAY 6, 1997:

APPEARANCES                                               2

STATE'S WITNESSES:

R. L. SCHIELD

    Direct Examination by Ms. Hood            5

    JURY OUT                                  11

    JURY IN                                   26

    Direct Examination Continued

       by Ms. Hood                          26

VIVIAN JACKSON

    Direct Examination by Ms. Huffman         30

    Cross-Examination by Mr. Easterling       36

JURY OUT                                                 41

P. E. McGINTY

    Direct Examination by Ms. Huffman         42

D. R. WARREN

    Direct Examination by Ms. Huffman         48

    Cross-Examination by Mr. Guerinot         52

    Cross-Examination Continued

       by Mr. Guerinot                      54

JURY IN                                                  57

P. E. McGINTY

    Direct Examination by Ms. Huffman         58

i

CHRONOLOGICAL INDEX CONTINUED

PAGE

VOLUME 28:

D. R. WARREN

    Direct Examination by Ms. Huffman      62

    Cross-Examination by Mr. Guerinot      70

    Redirect Examination by Ms. Huffman      72

STATE'S EXHIBIT 69 (VIDEO) PUBLISHED TO JURY      73

STATE REOFFERS ALL EVIDENCE OFFERED DURING

    GUILT-INNOCENCE PHASE OF TRIAL      74

STATE RESTS      74

JURY OUT      75

MOTION FOR INSTRUCTED VERDICT AS TO

    SPECIAL ISSUE NUMBER ONE      75

JURY IN      75

DEFENSE WITNESSES:

J. C. NEAL

    Direct Examination by Mr. Easterling      76

    Cross-Examination by Ms. Huffman      79

MONIQUE WINN

    Direct Examination by Mr. Easterling      81

SHARON BUCK

    Direct Examination by Mr. Easterling      87

JAMES BUCK

    Direct Examination by Mr. Easterling      94

CHRONOLOGICAL INDEX CONTINUED

                                                              PAGE

VOLUME 28:

WALTER QUIJANO

     Direct Examination by Mr. Easterling              101

     JURY OUT                                          121

     JURY IN                                           145

     Cross-Examination by Ms. Huffman                  146

     Redirect Examination by Mr. Easterling            168

PATRICK GORDON LAWRENCE

     Direct Examination by Mr. Easterling              177

     Cross-Examination by Ms. Huffman                  206

     Redirect Examination by Mr. Easterling            214

     JURY OUT                                          220

     Redirect Examination Continued

          by Mr. Easterling (Bill of Exceptions)       222

JURY IN                                                234

DEFENSE RESTS                                          234

OBJECTIONS TO COURT'S CHARGE                           234

JURY OUT                                               235

OBJECTIONS TO COURT'S CHARGE CONTINUED                 235

JURY IN                                                238

COURT'S CHARGE READ TO JURY                            238

## CHRONOLOGICAL INDEX CONTINUED

PAGE

VOLUME 28:

ARGUMENTS OF COUNSEL:

FOR THE STATE BY MS. HOOD                      239

FOR THE DEFENSE BY MR. EASTERLING              243

FOR THE STATE BY MS. HUFFMAN                   256

JURY RETIRES TO DELIBERATE                     272

COURT REPORTER'S CERTIFICATE                   273

iv

## ALPHABETICAL INDEX

PAGE

VOLUME 28:

BUCK, JAMES

    Direct Examination by Mr. Easterling    94

BUCK, SHARON

    Direct Examination by Mr. Easterling    87

JACKSON, VIVIAN

    Direct Examination by Ms. Huffman    30

    Cross-Examination by Mr. Easterling    36

LAWRENCE, PATRICK GORDON

    Direct Examination by Mr. Easterling    177

    Cross-Examination by Ms. Huffman    206

    Redirect Examination by Mr. Easterling    214

    Redirect Examination Continued

        by Mr. Easterling (Bill of Exceptions)

McGINTY, P. E.

    Direct Examination by Ms. Huffman    42

McGINTY, P. E.

    Direct Examination by Ms. Huffman    58

NEAL, J. C.

    Direct Examination by Mr. Easterling    76

    Cross-Examination by Ms. Huffman    79

v

ALPHABETICAL INDEX CONTINUED

                                                              PAGE

VOLUME 28:

QUIJANO, WALTER

    Direct Examination by Mr. Easterling              101

SCHIELD, R. L.

    Direct Examination by Ms. Hood                      5

    Direct Examination Continued

        by Ms. Hood                                    26

WARREN, D. R.

    Direct Examination by Ms. Huffman                  48

    Cross-Examination by Mr. Guerinot                  52

    Cross-Examination Continued

        by Mr. Guerinot                                54

WARREN, D. R.

    Direct Examination by Ms. Huffman                  62

    Cross-Examination by Mr. Guerinot                  70

    Redirect Examination by Ms. Huffman                72

WINN, MONIQUE

    Direct Examination by Mr. Easterling               81

EXHIBIT INDEX

VOLUME 28 - PUNISHMENT, MAY 6, 1997:

| NO. | DESCRIPTION | I.'D. | OFF. | ADM. | SHOWN VOL. |
|-----|-------------|-------|------|------|------------|
| S-59 | Jail Booking Records | 10 | 9/11 | 21/26 | 30 |
| S-59A | Jail Booking Records | 8 | -- | -- | -- |
| S-60 | Jail Booking Records | 10 | 9/11 | -- | |
| S-60A | Jail Booking Records | 8 | -- | -- | -- |
| S-61 | Jail Booking Records | 10 | 9/11 | 21/26 | 30 |
| S-61A | Jail Booking Records | 8 | -- | -- | -- |
| S-62 | Jail Booking Records | 10 | 9/11 | 23/26 | 30 |
| S-62A | Jail Booking Records | 8 | -- | -- | -- |
| S-63 | Jail Booking Records | 10 | 9/11 | 21/26 | 30 |
| S-63A | Jail Booking Records | 8 | -- | -- | -- |
| S-64 | Jail Booking Records | 10 | 9/11 | 23/26 | 30 |

vii

## EXHIBIT INDEX CONTINUED

VOLUME 28 - PUNISHMENT, MAY 6, 1997:

| NO. | DESCRIPTION | I.'D. | OFF. | ADM. | SHOWN VOL. |
|------|------------|-------|------|------|------------|
| S-64A | Jail Booking Records | 8 | -- | -- | -- |
| S-65 | Jail Booking Records | 10 | 9/11 | -- | -- |
| S-65A | Jail Booking Records | 8 | -- | -- | -- |
| S-66 | Pen Packet | 8 | 9 | 26 | 30 |
| S-67 | Judgment and Sentence | 28 | 28 | 28 | 30 |
| S-68 | Judgment and Sentence | 27 | 28 | 28 | 30 |
| S-69 | Video-Record Information | 73 | 73 | 73 | -- |
| S-70 | Fingerprint Card | 6 | -- | -- | -- |
| S-70 | Summary of State's Evidence | *240/ 242 | -- | -- | -- |
| D-1 | Forensic Psychological Evaluation | 117 | 118/ 120 | 234 | 30 |

<u>EXHIBIT INDEX CONTINUED</u>

<u>VOLUME 28 -PUNISHMENT, MAY 6, 1997:</u>

| NO. | DESCRIPTION | I.'D. | OFF. | ADM. | SHOWN VOL. |
|-----|-------------|-------|------|------|------------|
| D-1A | Forensic Psychological Evaluation | 143 | 143 | **143 | 30 |
| D-2 | Curriculum Vitae-Patrick Lawrence Ph.D | 178 | 178 | 179 | 30 |
| D-3 | Psychological Evaluation | 216 | 217 | 234 | 30 |

*DEMONSTRATIVE PURPOSES ONLY

**APPELLATE PURPOSES ONLY

CAUSE NO. 699684

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| | ) | |
| VS. | ) | HARRIS COUNTY, T E X A S |
| | ) | |
| DUANE EDWARD BUCK | ) | 208TH JUDICIAL DISTRICT |

APPEARANCES:

FOR THE STATE OF TEXAS:

Ms. Joan Huffman
Assistant District Attorney
201 Fannin
Houston, Texas 77002
Telephone No:  (713) 755-5800
SBOT No.:  10296500

Ms. Linda Hood
Assistant District Attorney
201 Fannin
Houston, Texas 77002
Telephone No:  (713) 755-5800
SBOT No.:  09943423

FOR DEFENDANT:

Mr. Danny K. Easterling
Attorney at Law
1018 Preston, 6th Floor
Houston, Texas 77002
Telephone No.:  (713) 228-4441
Fax No.  (713) 228-4072
SBOT No.:  01472017

Mr. Jerry Guerinot
Attorney at Law
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Phone:  (713) 225-0094
Fax No.:  (713) 225-0099
SBOT No.:  08571500

2

BE IT REMEMBERED that upon the 6th day of May, 1997, the above entitled and numbered cause came on for punishment hearing before the Honorable Denise Collins, Judge presiding, and a jury; in the 208th District Court of Harris County, Texas; and both the State and the Defendant, appearing in person and/or by counsel, the following proceedings were had, viz.:

3

1          THE COURT:  This is Cause

2     No. 699684, the State of Texas

3     vs. Duane Edward Buck.

4          Are both sides ready to

5     proceed?

6          MS. HUFFMAN:  The State's

7     ready.

8          MR. EASTERLING:  The

9     Defense is ready.

10          THE COURT:  Call your

11     first witness.

4

1                       R. L. SCHIELD

2     was called as a witness by the State and,

3     having been duly sworn, testified as follows:

4

5                 DIRECT EXAMINATION

6     BY MS. HOOD:

7     Q   Please state your name.

8     A   R. L. Schield.

9     Q   How are you employed, sir?

10    A   The Harris County Sheriff's Department.

11    Q   What is your assignment?

12    A   I'm assigned to the Identification

13        Division.

14    Q   What are your duties with the I.D.

15        Division?

16    A   We maintain print records of prisoners

17        and we also do crime scene

18        investigations.

19    Q   Do you have any experience and training

20        and that enables you to carry out your

21        duties?

22    A   Yes, ma'am.

23    Q   What would that consist of?

24    A   In regard to fingerprints, I've

25        completed basic and advanced fingerprint

5

1      courses with the FBI, and I've also had

2      sixteen years of day-to-day experience

3      in advanced latent fingerprint

4      comparison.

5    Q   What is a latent print?

6    A   A latent print is a print that's left

7      behind by a person and developed by

8      powder or chemicals.

9    Q   What's an ink print?

10   A   An ink print is when you take a person

11     and place their finger or thumb on an

12     ink pad and then roll their print out on

13     paper.

14   Q   Let me ask you this.  Do you ever have

15     two people who have the same prints?

16   A   No, ma'am.

17   Q   Is it possible to take a known print and

18     compare it to an unknown print to

19     determine if there are a match?

20   A   Yes, ma'am.

21   Q   I'd like you to take a look at what I've

22     just had marked as State's Exhibit No.

23     70.  Can you tell me what that is?

24   A   Yes, ma'am.

25   Q   What is it?

6

1    A    It's a 3x5 card containing prints.

2    Q    Where did those prints come from?

3    A    The man at the table in the maroon

4         shirt.

5    Q    Did you take those prints?

6    A    I did.

7    Q    When?

8    A    At 8:03 this morning.

9    Q    Do the prints on that card belong to the

10        person that you've just identified?

11   A    Yes, ma'am.

12                   MS. HOOD:  May the record

13               reflect that the Deputy has

14               identified the defendant in this

15               case?

16                   THE COURT:  The record

17               will so reflect.

18

19   BY MS. HOOD:

20   Q    Have you had the opportunity to compare

21        the known prints on State's No. 70 with

22        some evidence including Jail Cards,

23        Judgment and Sentences, Pen Packet?

24   A    Yes, ma'am.

25   Q    I'd like to show you now what's been

7

1    marked State's Exhibits 59-A, 60-A, 61-

2    A, 62-A, 63-A, 64-A, and 65-A.  Can you

3    identify them?

4  A  Yes.

5  Q  Did you compare the prints on Exhibits

6    59-A through 65-A to the known prints?

7  A  Yes, ma'am, I did.

8  Q  What were the results?

9  A  They were all made by the same person.

10  Q  That would be the person that you

11    identified earlier?

12  A  Yes, the man at the table in the maroon

13    shirt.

14  Q  Do you know the name of that person?

15  A  Duane Edward Buck.

16  Q  I'd like to show you State's No. 66.

17    Can you identify this?

18  A  Yes, ma'am.

19  Q  What is it?

20  A  This is called a Pen Packet.

21  Q  Have you had the opportunity to compare

22    the prints in State's No. 70 with the

23    prints in State's 66, which is the Pen

24    Packet?

25  A  Yes, ma'am.

1    Q    What was the result of your comparison?

2    A    They were also made by the same person.

3    Q    Who is?

4    A    Duane Buck.

5    Q    What is a Pen Packet?

6    A    When you go to the penitentiary, that's

7         what you get from the Texas Department

8         of Corrections.  It contains the

9         Judgment and Sentence, photograph,

10        fingerprints.

11   Q    Can you tell me how Jail Cards

12        originate?

13   A    Jail Cards originate when someone is

14        booked into the Harris County Jail.

15        When a person comes in, they get

16        information about the case, what the

17        charge is, personal description of the

18        person, personal property items and

19        things like that are listed.

20                  MS. HOOD:  At this time

21             we'd offer into evidence State's

22             No. 66, the Pen Packet of Duane

23             Buck as well as State's Exhibits

24             59 through 65.

25                  MR. GUERINOT:  May we

                                               9

1       approach the bench?

2

3               (The following proceedings

4               are held at the bench

5               outside the hearing of the

6               jury.)

7

8               MR. GUERINOT:  I would

9       object to this portion of the

10      Judgment here.  Other than that,

11      I have no objection.

12              MS. HUFFMAN:  I'll take

13      care of that.

14              THE COURT:  Then I'll go

15      ahead and admit that as amended.

16

17              (The following proceedings

18              are held in the hearing of

19              the jury.)

20

21  BY MS. HOOD:

22  Q   You've just examined State's Exhibits 59

23      through 65.  Can you tell me first of

24      all what they are?

25  A   They're copies of Jail Cards.

                                              10

1    Q    Are they exact duplicates of Exhibits

2         59-A, 60-A, 61-A, 62-A, 63-A, 64-A, and

3         65-A?

4    A    Yes, ma'am.

5                        MS. HOOD:  We'd offer

6              State's 59 through 65 after

7              tendering them to Defense

8              Counsel.

9                        THE COURT:  Ladies and

10             gentlemen, I'd ask that you step

11             back to the jury room for just a

12             moment.

13

14                       (The following proceedings

15             are held outside the

16             presence of the jury.)

17

18                       MR. GUERINOT:  We would

19             object to State's Exhibit No. 59

20             and the extensive verbiage down

21             here, the fact that he's

22             referred to as a parole

23             violator, all this verbiage

24             right here.

25                       We would object to State's

                                                    11

1    No. 60 which refers to a Motion

2    to Revoke Parole where it is

3    clear that it was dismissed and

4    therefore it's not relevant.  It

5    does not show any conviction.  I

6    assume that's what they mean by

7    dismissed.

8         THE COURT:  Are you

9    objecting to the language Motion

10   to Revoke Parole?

11        MR. GUERINOT:  Yes, all of

12   that because it does not result

13   in conviction.  It's not

14   admissible just because

15   something was filed.  It's not

16   relevant.

17        MS. HOOD:  It shows why

18   the booking card was originally

19   made in the first place.  The

20   origin of that whole exhibit is

21   relevant.

22        MR. GUERINOT:  It is not

23   relevant in that it does not

24   show a conviction.

25        MS. HOOD:  All of these

12

1    documents are relevant under

2    Rule 902.  They are certified

3    copies of public records.

4        MR. GUERINOT:  That

5    doesn't make them relevant.

6        MS. HOOD:  It is relevant.

7    That's why the document was

8    generated.  That's why he was

9    arrested.

10        MS. HUFFMAN:  It's

11    relevant at punishment because

12    in a capital murder case we have

13    to prove that the defendant

14    would be a continuing threat to

15    society.  We're not limited by

16    cases in which the defendant was

17    convicted or for which there

18    were convictions.  The fact is

19    that there was a Motion to

20    Revoke Parole and he was placed

21    in custody.  Those are facts

22    that the jury should have before

23    them to consider.  If there is

24    something that shows it was

25    dismissed, that may be something

13

1     they want to argue, but because

2     it was dismissed doesn't mean

3     it's not relevant for the jury

4     to know that he was put back

5     into jail because he violated

6     his parole in some fashion.

7          THE COURT:  This offense

8     is entitled Parole Violator and

9     then written underneath that is

10    nine cases, and I guess that's a

11    dollar figure there.

12         MS. HUFFMAN:  I believe

13    those are traffic tickets,

14    because the agency is HPD.  I'm

15    assuming those are some kind of

16    traffic violations.  It's a

17    traffic hold.

18         THE COURT:  Let me go back

19    then and do some re-thinking.

20         MS. HUFFMAN:  I would also

21    argue at this point that there

22    is Motion to Revoke Parole

23    pending that was based on this

24    new capital murder.  The jury

25    has convicted him of this

14

1    capital murder.  I don't see why

2    that has to be whited out.

3         The first entry on 59 is

4    capital murder, multi-murder,

5    and the date is 7-30-95.  On

6    8-7-95 it's showing that there

7    was a Motion to Revoke Parole.

8         THE COURT:  So it's your

9    position that it's relevant to

10   this specific issue.

11        MR. GUERINOT:  The bottom

12   line is that it did not result

13   in a conviction.  Just the mere

14   fact that you're arrested for

15   something does not make that

16   admissible.  They are required

17   to bring eyewitnesses down here.

18   Just because they have some

19   document that they want to get

20   in doesn't make it admissible.

21   They have to have somebody --

22        THE COURT:  What I'm

23   trying to get at is that because

24   it says parole violator --

25        MR. GUERINOT:  That's

15

1          the --

2                  THE COURT:  Let me finish.

3          There was a Motion to Revoke his

4          parole.  Their position is

5          that's relevant to the

6          punishment issues in a capital

7          murder case.  Your response is

8          what?

9                  MR. GUERINOT:  My response

10         is that it did not result in

11         conviction.  Therefore, if they

12         want to prove up a parole

13         violation, they have to prove up

14         that Mr. Buck committed a

15         violation of his parole, was

16         adjudicated and sent back.  Just

17         the fact that there's a piece of

18         paper somewhere does not make it

19         in and of itself admissible.

20         This clearly did not result in a

21         conviction.  It says dismissed.

22         The presumption is that it

23         didn't happen.  If it didn't

24         happen, it's not admissible.

25                 MS. HUFFMAN:  I'm not sure

16

1    what he's referring to at this

2    point.

3          THE COURT:   State's 60

4    refers to a Motion to Revoke

5    Parole and shows dismissed.

6    Then under the offense title it

7    says parole violator.   On 59 it

8    says Motion to Revoke Parole

9    pending a capital murder.

10         MR. GUERINOT:   Also on

11   State's No. 60, Your Honor, it

12   says "caution escape risk."

13   We'd further object to that.

14   That hasn't been proved up.

15         MS. HUFFMAN:   I can

16   respond.   First of all, if the

17   Court would look at State's 66

18   which has already been

19   introduced, the Court will see

20   from this document that it's

21   clear that the defendant was

22   returned to TDC as a parole

23   violator.   It says that right

24   here.   Why is this any different

25   than any other case where we

17

1    prove up convictions through

2    documents when there are no live

3    witnesses in these cases either.

4    We can call them if we want to

5    at this phase or we don't have

6    to.

7         THE COURT:  It's my

8    understanding that he was in the

9    Harris County Jail as a result

10   of the capital murder charge and

11   then the Motion to Revoke was

12   filed.

13        MS. HUFFMAN:  That's the

14   case, but there was a prior case

15   where he was brought in as a

16   parole violator and sent back to

17   prison.

18        THE COURT:  Which is this

19   one.  Let me see if I have this

20   straight.  This resulted in him

21   going back to the penitentiary

22   and this one did not.  This one

23   says parole violator and then

24   dismissed.  It did not result in

25   any action taken by the

18

1    Government.

2              MS. HUFFMAN:  Yes, Your

3    Honor.

4              MR. GUERINOT:  Your Honor,

5    that one certainly did not

6    result in the action that's

7    reflected in State's 66.

8              THE COURT:  That was my

9    question.

10             MR. GUERINOT:  Therefore,

11   I don't think there is any

12   probative value at all.  I think

13   the Court can see the reason

14   it's not admissible.

15             MS. HUFFMAN:  Exhibit No.

16   59-A deals with the fact that a

17   Blue Warrant was filed after he

18   was charged with this Capital

19   Warrant.

20             THE COURT:  I thought this

21   was dismissed.

22             MS. HUFFMAN:  That's not

23   dismissed, Judge.

24             THE COURT:  That's what

25   this shows.

1        MS. HUFFMAN:  That's a

2   different one.  This was May of

3   '92.

4        THE COURT:  What happened

5   to this?

6        MS. HUFFMAN:  That was

7   filed after he was charged with

8   capital murder.

9        THE COURT:  If you cannot

10  prove it up, it should probably

11  be deleted.  On 8-7-95 the

12  Motion to Revoke is still

13  pending.

14       MS. HUFFMAN:  I believe

15  that's correct.

16       THE COURT:  I'll grant

17  your objection as to that.

18       MR. GUERINOT:  How about

19  the words "caution escape risk"?

20       THE COURT:  Yes, sir.

21       MR. GUERINOT:  In the

22  upper left-hand corner on 61.

23       THE COURT:  I saw it.

24       MR. GUERINOT:  On 65 you

25  can barely read.

                                    20

1          MS. HUFFMAN:  On that one

2    which is State's 65, the date is

3    there.  It indicates that he was

4    returned to TDC on a parole

5    violation.  There was a final

6    disposition on that one.  He was

7    returned to TDC.

8          MR. GUERINOT:  The bottom

9    line is that they can't say why

10    he was returned to TDC.  I'd

11    like to take the witness on voir

12    dire.

13          THE COURT:  Why don't we

14    go through all of them first.  I

15    assume you're objecting to all

16    of them.

17          MR. GUERINOT:  Some of

18    them I don't have objection to.

19    Let's delete those now.  I don't

20    have an objection to State's 63.

21          THE COURT:  Then I'll

22    admit State's 63.  At this time

23    I'm going to admit State's No.

24    59 as amended and 61 as amended

25    subject to Defense Counsel's

21

1    verbal objection.

2          MR. GUERINOT:   I have no

3    objection to 59 as amended and

4    61 as amended.

5          THE COURT:   They are

6    admitted.

7          MR. GUERINOT:   As to

8    State's 62, I would object to

9    the first line.   I'd object to

10   all of that.   It did not result

11   in a conviction of any kind

12   whatsoever.

13         I'd object to the part

14   where it says repeat offender.

15   The Judgment does not

16   demonstrate a repeat offender

17   but just resulted in thirty

18   days.

19         MS. HUFFMAN:   That's the

20   reason, that's the class of

21   misdemeanor it is that indicates

22   it's more of the same thing,

23   what makes it that degree of

24   offense.

25         THE COURT:   What is it?

                                    22

1               MR. GUERINOT:  The

2     Judgment does not reflect a

3     second offender.

4               MS. HUFFMAN:  We don't

5     care, Judge.  Just take it out.

6               MR. GUERINOT:  I'm not

7     going to have an objection as to

8     State's Exhibit 64.

9               THE COURT:  State's

10    Exhibit No. 64 will be admitted.

11              MR. GUERINOT:  No

12    objection to 62 as amended.

13              THE COURT:  Sixty-two is

14    admitted.

15              What about 65?

16              MR. GUERINOT:  I'd object

17    here where it says escape risk.

18    You better look at this

19    document, Judge.  I'm going to

20    object to this whole document.

21    It has a stamp mark on there but

22    -- I would object in that it

23    does not show any kind of

24    conviction.  It does not show a

25    revocation of parole.  All it

23

1      has is an allegation.  Obviously

2      no action was taken on the part

3      of the Board of Pardons and

4      Paroles to return him to the

5      Texas Department of Criminal

6      Justice.

7            THE COURT:  That's 65?

8            MR. GUERINOT:  Yes.

9            MR. EASTERLING:  If I may

10     add something.  It's hearsay and

11     it denies our client

12     confrontation of witnesses or

13     whoever filed the motion,

14     whatever governmental agency

15     filed the motion.

16           THE COURT:  Is there a

17     reflection in the other

18     documents of the Motion to

19     Revoke referencing 65 was a

20     final disposition?  Is there

21     something in your documents?

22          MS. HUFFMAN:  No, ma'am,

23     not that's relevant to that.

24          THE COURT:  Then the

25     relevance of this document other

24

1    than --

2         MS. HUFFMAN:  I was going

3    to make the argument that the

4    document shows that he was

5    returned to TDC on August 24th

6    of 1994 as a result of being

7    placed in custody.  It shows

8    that the person was arrested and

9    charged and sentenced to some

10    jail time.

11         MR. GUERINOT:  This is a

12    transmittal order.  That's all

13    it is.

14         THE COURT:  What is there

15    on there to indicate that he was

16    returned?

17         MS. HUFFMAN:  If I may

18    call the jail card person, he

19    may be able to interpret this

20    better than I can.

21         THE COURT:  Did you have

22    an objection as to State's No.

23    66?

24         MR. GUERINOT:  As amended,

25    I have no objection to State's

25

```
 1                66.

 2                     THE COURT:   Then it's

 3                admitted.

 4                     Thus far I have admitted

 5                State's 59, 61, 62, 63, 64, and

 6                66.  I have not yet admitted 60

 7                and 65.

 8                     MS. HUFFMAN:   We'll

 9                withdraw them.

10                     THE COURT:   Then let the

11                record reflect that 59, 61, 62,

12                63, and 66 are admitted.

13                     MS. HUFFMAN:   Sixty-seven

14                and 68, I'm going to offer them.

15                     MR. GUERINOT:   And I'm not

16                going to have an objection.

17                     THE COURT:   Then bring the

18                jury in.

19                     (The following proceedings

20                     are held in the presence

21                     of the jury.)

22

23                DIRECT EXAMINATION CONTINUED

24           BY MS. HOOD:

25           Q    Deputy, I'd refer your attention to
```

26

1      Exhibits 62 and 63 as well as State's

2      Exhibits 67 and 68.  Do State's Exhibits

3      62 and 63 relate to State's 67 and 68?

4   A  Yes, ma'am.

5   Q  For the record and for the jury's

6      edification, what is State's 62?

7   A  This is a copy of a jail card.

8   Q  What is State's Exhibit 68?

9   A  It's a Judgment and Sentence.

10  Q  As you've testified earlier, have you

11     had an opportunity to compare the

12     fingerprints on State's 62 to the known

13     prints that you have on State's No. 70?

14  A  Yes, ma'am.

15  Q  And they refer to this defendant, Duane

16     Buck?

17  A  Yes, ma'am.

18  Q  What is State's 68?

19  A  Sixty-eight is a Judgment and Sentence.

20  Q  Can you connect State's 62 which

21     contains the known print of Duane Buck

22     to State's No. 68?

23  A  Yes, ma'am by cause number.

24  Q  So does State's 62 refer to the same

25     Duane Buck that's reflected in 68?

27

1    A    Yes, ma'am.

2    Q    State's 63 is a jail card for this

3         defendant Duane Buck which you

4         determined from the prints on it,

5         correct?

6    A    Yes, ma'am.

7    Q    What is State' 67?

8    A    State's 67 is also a Judgment and

9         Sentence.

10   Q    To whom does it refer?

11   A    Duane Edward Buck.

12   Q    How did you connect that up?

13   A    By cause number.

14                  MS. HOOD:  Your Honor, at

15              this time we would offer State's

16              68 and 67 after tendering the

17              same to Defense Counsel for his

18              inspection.

19                  MR. GUERINOT:  We have

20              looked at them Judge and have no

21              objection.

22                  THE COURT:  They are

23              admitted.

24                  MS. HOOD:  Pass the

25              witness.

                                        28

1          MR. GUERINOT:   We have no

2      questions.

3

4          (At this time the witness

5          is excused from the

6          courtroom.)