# United States District Court
# Southern District of Texas

## Case Number: 03mc386

## ATTACHMENT

Description:

☐ State Court Record      ☑ State Court Record Continued

☐ Administrative Record

☑ Document continued - Part 141 of _____

☐ Exhibit to: _____
        number(s) / letter(s) _____

Other: _____

_____

_____

1    no personal injury.

2    Q    Do they ever do criminal work like pro

3         bono stuff?

4    A    Once in awhile.  One of the guys that

5         came to work for us was doing a pro bono

6         case at Vinson, Elkins.

7    Q    Did you get involved with that at all?

8    A    No.

9    Q    You mentioned that you discussed with

10        your associates at work the death

11        penalty.  Did you indicate that you felt

12        it was wrong or inappropriate?

13   A    Yes.

14   Q    How did you respond to that argument, or

15        did you respond?

16   A    Well, I don't know that I think it's

17        right or wrong.  I think if you take the

18        life of another person that it's

19        justified.  If it was a close friend of

20        mine or if my husband was involved, I

21        don't feel that that person should not

22        die.

23   Q    But in this case it would be a person

24        that would be far removed from your

25        personal relationships.  Do you think

1    those same rules apply when it's a
2    stranger who is killed?
3  A  Yes, I do.
4  Q  So justice for them too could mean the
5    death penalty in some cases where a
6    person is convicted of capital murder?
7  A  Yes, because that person had a life and
8    had family and friends too.
9  Q  Let's talk about these issues.  Read
10    Issue Number One to yourself one more
11    time.
12        By the time you get to this
13    issue you have found the defendant
14    guilty of capital murder.  You know all
15    the facts of how the killing occurred
16    and you know about the victim.  In some
17    trials you may have received more
18    evidence.  At the punishment phase of
19    the trial you may receive evidence of
20    the person's background including his
21    criminal history if there is one.  You
22    may have heard evidence of his military
23    background, his family background, all
24    kinds of things.  It's a pretty wide
25    open hearing if the evidence is

1    available.

2             Let's look at the issue itself.

3    It requires that the State prove beyond

4    a reasonable doubt that there's a

5    probability that the defendant would

6    commit criminal acts of violence.  In

7    your opinion what does the word

8    probability mean in the context of that

9    issue?

10   A    With beyond a reasonable doubt attached

11        to it?

12   Q    Yes.

13   A    More likely than not.

14   Q    That's exactly the definition we would

15        suggest.  The law doesn't give us a

16        definition for the word so that means

17        the jurors have to use their own common

18        sense definition of the word.

19   Q    We have to prove to you beyond a

20        reasonable doubt that it's more likely

21        than not that he's going to be violent

22        in the future.

23             It's clear to you that it

24        doesn't mean we have to prove to you

25        absolutely, correct?

1    A    Yes.

2    Q    But that it's more likely than not?

3    A    Yes.

4    Q    Would you agree with me that it would be impossible for me to prove to you with a hundred percent certainty what anyone is going to do in the future?

8    A    Yes.

9    Q    Look at the words criminal acts of violence. Would you agree that an assault against another person, fist-fighting, slapping another person, stabbing another person, and in some instances crimes against property like arson or shooting out car tires, beating out windows, all of those are acts of violence?

18    A    Yes.

19    Q    That's what the State has to prove. The State has to prove to you that it's more likely than not that the defendant is going to commit some kind of violence in the future that would constitute a threat to society. That's the burden we have.

148

1           If you answer that question yes,
2     you're two thirds of the way to the
3     death penalty.  Does that seem like a
4     sufficient standard for you?  Does it
5     seem like a big enough burden, or do you
6     think we should have to prove more
7     before you could answer that question
8     yes?
9  A  I think that beyond a reasonable doubt
10    standard makes it a big enough hurdle.
11 Q  Let me ask you this.  As I told you, in
12    some cases you may hear evidence about a
13    defendant's criminal background and in
14    some cases you may not.  You may hear
15    evidence about background or other
16    things in some cases and others you may
17    not.  In some cases you may hear only
18    about the facts of the capital murder
19    itself.
20          Do you think that the facts of
21    the case itself, if they were bad
22    enough, violent enough, whatever, that
23    it could cause you to believe beyond a
24    reasonable doubt that it's more likely
25    than not that he would be violent in the

1      future?

2    A    Yes.

3    Q    So you wouldn't require us to prove to

4         you a violent history; is that correct?

5    A    No, I would not.  It would depend on the

6         case, but if it was violent enough, the

7         nature of it, I would consider that.  I

8         wouldn't require that there be a history

9         of prior crimes of violence.

10   Q    Let me ask you about the word society

11        there.  Do you think that people that

12        are inside the prison should be

13        protected?  I'm talking about inmates,

14        guards, lawyers, people who work in the

15        prison system as well as the inmates, do

16        you think that they have the right to be

17        protected against future acts of

18        violence by the defendant?

19   A    Gosh, I don't see why not.

20   Q    This may be a good time to talk to you

21        about the issue that you've raised on

22        your questionnaire that seems to be a

23        major concern of yours, and that's the

24        issue of early release or mandatory

25        release.  You use the adjective that

150

1   it's abhorrent.  I think you mean you

2   don't like it, correct?

3  A   Something like that, yes.

4  Q   I can tell you that we're not going to

5      be discussing parole or mandatory

6      release.

7  A   No information at all?

8  Q   No.  The only reference to parole that

9      you will hear about is when Judge

10     Collins reads the charge and will give

11     you the Court's instructions that you

12     are not to consider parole or the

13     existence of parole or how parole might

14     be applied to this defendant in the

15     future in determining how to answer

16     these Special Issues.  You must make an

17     objective decision about an individual,

18     about whether or not he's going to be a

19     continuing threat to society and not

20     base it on anything else.

21          Can you do that?  Can you follow

22     the Court's instructions?

23 A   Yes, I can because it's not an option so

24     I will follow that instruction.

25 Q   I'm not sure what you meant.  We're at

1    the punishment stage of the trial.
2    There are no options.  The Judge would
3    instruct you that you could not consider
4    parole.
5  A  Well, I'm referring to the two
6    possibilities.  I don't know if there's
7    life without parole, if that's one of
8    the options, or life in prison.  I don't
9    know.
10  Q  You cannot consider parole for any
11    purpose whatsoever.  Can you answer
12    these questions and not consider what
13    life means?  You're not allowed to
14    consider anything else.  You will
15    receive an instruction in that regard.
16        In other words, you have to
17    answer those questions independently
18    based on the evidence and not whether or
19    not you think he might get out at some
20    future time.  Can you do that?
21  A  I would have to say that would be in the
22    back of my mind.
23  Q  That's why I brought it up.  Your
24    language is pretty strong here.  Most
25    everybody that comes in here has some

```
 1    ideas about what a life sentence means.
 2    We wish they didn't but they do.  You
 3    would be instructed that you can't
 4    consider that though and I'm sure you
 5    can understand why.  In this case we're
 6    seeking the death penalty so this is
 7    extremely important.  You would be given
 8    instructions that you would be required
 9    to follow and you have to be able to
10    follow them.  You're supposed to base
11    your answers on the evidence and the
12    evidence alone and not on early release
13    or your feelings about early release or
14    whether it exists or whatever.
15               What do you think?
16  A  I think I could answer these questions
17    the way they are worded.
18  Q  You can do it?
19  A  I believe I could.
20  Q  Then I'd ask you to read Issue Number
21    Two to yourself.  Issue Number Two is
22    the issue you get to after you have
23    found the defendant guilty and after you
24    have answered yes to the first question,
25    that he would be a continuing threat to
```

society.

Now what is required for you to do is to reconsider all the evidence. That issue is to be answered on the evidence. It doesn't start out do you find from the evidence beyond a reasonable doubt. The State has no burden as to that issue whatsoever. That's up to the jurors to determine. They have to go back there and look at the evidence and see if there's something that's sufficiently mitigating to warrant that a life sentence is more appropriate than the death sentence.

I would suggest to you that the most important word in that issue is the word sufficiently. You might hear evidence that you think could be mitigating but it may not be sufficiently mitigating towards life rather than death.

It's sort of like a balancing process. Here you have found the man guilty. You've found that he's a continuing threat to society, and now

1    you look to see if there is something
2    sufficient to outweigh that.  Does that
3    make sense to you?
4  A  Yes.
5  Q  You may sit there and be thinking of
6    factors or circumstances that might be
7    mitigating, you may not be able to think
8    of anything.  Does anything come to mind
9    as something that would be sufficiently
10    mitigating to you to warrant a life
11    sentence rather than a death sentence?
12  A  I can't think of anything.
13  Q  Let me see if I can give you some
14    examples of some things that could be
15    mitigating in some cases.  For example,
16    let's say that we have a very youthful
17    offender, a seventeen-year old.  Some
18    people may consider that mitigating.
19    However, there are seventeen-year olds
20    on death row.
21        Another example could be mental
22    retardation.  Some people think that's
23    mitigating.  Maybe you recall the Penry
24    case.  That was the case that said that
25    the jury ought to be given every piece

```
 1        of information that's available on the
 2        person to determine if the death
 3        sentence is appropriate.
 4                   How would you feel in a
 5        situation if you got information that
 6        the defendant had voluntarily become
 7        intoxicated on drugs or alcohol and had
 8        committed a capital murder?  Do you
 9        think that mitigates against the death
10        penalty?
11   A    No.
12   Q    Do you think a person is responsible for
13        their actions nevertheless?
14   A    Yes, I do.
15   Q    Can you keep an open mind and wait until
16        you hear all of the evidence before you
17        make that determination?
18   A    Yes.
19   Q    I'm looking through your questionnaire
20        quickly and seeing if there's anything I
21        need to ask you about specifically.
22                   Have you ever practiced any
23        criminal law?
24   A    No, I have not.
25   Q    Have you ever been to the Criminal
```

156

| 1 | | Courthouse before? |
|---|---|---|
| 2 | A | I think they brought us down from school |
| 3 | | to show us Judge Poe. |
| 4 | Q | You were asked what was the first thing |
| 5 | | that comes to your mind when you think |
| 6 | | of prosecutor and you said you wouldn't |
| 7 | | want to work for the Government. Why |
| 8 | | not? |
| 9 | A | I think it would be kind of tough to |
| 10 | | have the Government as your employer. |
| 11 | | They don't pay very much either. |
| 12 | Q | You used to work for Baker/Botts? |
| 13 | A | Yes, but I got the big firm blues. I |
| 14 | | wanted to work for a smaller firm. |
| 15 | Q | At the end of your questionnaire you |
| 16 | | were given a group of statements that |
| 17 | | you were asked to agree or disagree |
| 18 | | with. You had quite a few comments |
| 19 | | here. I'm not quite sure I understand |
| 20 | | some of this. |
| 21 | A | Well, I had some question about taking |
| 22 | | someone's life based on what they've |
| 23 | | done but I believe it's necessary. I |
| 24 | | believe in a lot of cases it's |
| 25 | | necessary. I don't know if it's morally |

| | | the right thing or not.  That's what I |
|---|---|---|
| 1 | | the right thing or not.  That's what I |
| 2 | | mean. |
| 3 | Q | Can you make a decision or is the |
| 4 | | feeling you have it may not be morally |
| 5 | | right would interfere? |
| 6 | A | No, I can make a decision. |
| 7 | Q | Is there anything in your religious |
| 8 | | background that would cause you a |
| 9 | | problem? |
| 10 | A | No. |
| 11 | Q | Would it be fair to say you have no |
| 12 | | problems? |
| 13 | A | It would be fair to say, yes. |
| 14 | Q | No. 17 says that capital punishment |
| 15 | | should be available as a punishment for |
| 16 | | more crimes than it is now.  You left |
| 17 | | that one blank. |
| 18 | A | I can't answer that.  It would depend on |
| 19 | | the circumstances. |
| 20 | Q | As far as premeditation, could you |
| 21 | | understand how a capital murder could |
| 22 | | occur, that the specific intent to kill |
| 23 | | a person could occur in the snap of the |
| 24 | | fingers? |
| 25 | A | Yes, I could. |

```
 1   Q   Could there be some capital murders that
 2       might not be thought out for a period of
 3       time where you could think that the
 4       death penalty could be appropriate?
 5   A   Yes.
 6   Q   And that would sort of depend on the
 7       circumstances?
 8   A   Yes, it would.  I wasn't sure how long a
 9       premeditation you were talking about.
10   Q   I have no other questions to ask from
11       your questionnaire.  There is one brief
12       question that comes to mind when we're
13       talking about putting a lawyer on the
14       panel.  Can you listen to the evidence
15       and do what the law requires without
16       interjecting your own legal knowledge
17       into the process?  You understand you
18       bring in your own knowledge, but some
19       jurors might put more stock in what they
20       hear some people say because of their
21       job.  Do you understand what I'm saying?
22   A   Yes.  I would probably try to be quiet
23       unless specifically asked.  Then, I
24       don't know.  It would depend.  I don't
25       know.
```

1   Q   Let me ask you this. You're not going

2        to try to impose your opinions on the

3        other eleven, correct?

4   A   I wouldn't try to, no.

5   Q   Do you think you might do that?

6   A   No.

7   Q   I've enjoyed speaking with you.

8

9            VOIR DIRE EXAMINATION

10  BY MR. GUERINOT:

11  Q   Let's move right ahead directly to your

12       statement about parole. The bottom line

13       is that parole can't come into this at

14       all, not at all. You're strongly

15       against people who are early released.

16  A   That's right.

17  Q   If you were to get on this jury, your

18       legal days as far as the law is

19       concerned are done. The Judge will tell

20       you what the law is. You can't go back

21       there, for instance, and give the jury

22       what you think is the definition of

23       something or interject your legal

24       opinions.

25  A   I understand that.

1   Q   And you have been told that you cannot
2       consider the possibility of parole.  You
3       said you could do that?
4   A   Yes, but the possibility that somebody
5       could get out even though he's a
6       continuing danger to society, that would
7       bother me.
8   Q   Let me make this clear to you.  Here's
9       what's going to happen.  We can use all
10      the hypotheticals we want but the bottom
11      line is that at this point you have
12      found the defendant guilty.  You
13      believe, as Ms. Huffman has stated, that
14      this person has committed capital
15      murder.  We're not talking about
16      manslaughter.  We're not talking about
17      an accident.  We're not talking about a
18      ricocheted bullet.  We're talking about
19      someone who intended to kill two people,
20      two people in this case.  You have found
21      that person guilty.
22              Now you come to those two
23      questions.  You say you can answer them
24      based on the evidence but you can see
25      how your feelings about parole just

                                        161

```
 1        possibly might cause you to answer those
 2        questions in such a way that the person
 3        on trial would get the death penalty
 4        because you don't want him out of jail?
 5    A   You're talking about that second
 6        question now?
 7    Q   Let me turn these issues towards you so
 8        you can see them.  The feeling that I'm
 9        getting from you -- I'll put it all into
10        the mix and then I'll ask the questions.
11              You've got somebody here who has
12        been convicted of two killings.  You've
13        found the specific intent to kill.  It's
14        not an accident.  It's not manslaughter.
15        It's the specific intent to kill.
16        You've answered this question yes, that
17        he would be dangerous, a continuing
18        threat to society.  There's no doubt
19        about that.  That's the way you feel.
20        That's how you've answered the
21        questions.
22              Then you get to this issue.  You
23        have to go back and reconsider all the
24        evidence here.  The bottom line is
25        though that if you have somebody guilty
```

```
1         of two intentional killings, this
2         question is going to be yes?
3    A    I think that's right.
4    Q    That's yes every time?
5    A    Excuse me?
6    Q    You'd answer that yes every time?
7    A    Yes, I think that's right.
8    Q    Let's go to this question.  Can you
9         think of anything that might be
10        mitigating?
11   A    I can't think of anything right this
12        minute.
13                  MR. GUERINOT:  May I have
14              a moment?
15                  THE COURT:  Yes, sir.
16                  MR. GUERINOT:  We
17              challenge for cause.
18
19             VOIR DIRE EXAMINATION
20   BY MS. HUFFMAN:
21   Q    Ms. Jones, you have a good understanding
22        of these issues, right?
23   A    Yes.
24   Q    You understand the way it works?
25   A    I do.
```

163

1  Q  You understand that you have found the
2     defendant guilty beyond a reasonable
3     doubt?
4  A  Yes.
5  Q  Then we move to the second stage of the
6     trial.  The State still has the burden
7     to prove to you that the first question
8     should be answered yes beyond a
9     reasonable doubt.  Maybe there is
10    evidence in the case that two people
11    were killed.  Maybe that's enough
12    evidence for you in regards to that
13    question.  However, what the law
14    requires is that you keep an open mind
15    until you've heard all the evidence.
16    You don't know what the facts of this
17    case are.  There could be all kinds of
18    facts about a person killing two people.
19         I'm not suggesting to you what
20    the facts of this case are, but let's
21    say that two people were killed.  There
22    is no self-defense issue.  Let's say you
23    have somebody who commits robbery and
24    didn't intend to kill anyone at all.
25    Let's say you have people at a party

playing cards at a family gathering.
Something happens during that game and
they get into a big fight and someone is
shot.  There could be just all kinds of
circumstances that you can imagine.

What the law requires is that to
be a qualified juror that you have to be
able to keep an open mind.  The bottom
line is that not every person who
commits capital murder deserves to die
for that crime.  There could be
mitigation involved.  Let's say you have
a seventeen-year old who has been kept
in a cage all his life and suddenly gets
out and goes on a rampage and kills two
people.  Maybe somebody would think
that's some sort of mitigation where he
shouldn't be killed.  Maybe there are
circumstances you can imagine where the
death penalty would be inappropriate.
You don't know what the evidence is
going to show.  The point is that every
case is different and all the
circumstances are different.

Now, do you feel that everyone

1    who commits capital murder should die no
2    matter what the circumstances are or how
3    old they are?  If you feel that way, you
4    need to tell us now.  Do you understand
5    what I'm saying?
6  A  Yes.
7  Q  Mr. Guerinot kind of led you through
8    Issue Number One about a person killing
9    two people and what you would do.
10        The point is, would you listen
11    to all of the evidence and keep an open
12    mind and then determine if we've proved
13    it to you?  Could you do that?
14  A  If it's an intentional killing, they
15    pulled the trigger and caused the death
16    of the person, and you kill one person
17    and you kill another with specific
18    intent to cause the death, that means
19    that you were intending to kill them.
20    It's not an accident.
21        To be honest with you, I would
22    have a real problem not saying that that
23    person would be a continuing threat to
24    society.  I think that continuing threat
25    means that it's likely to do it again,

166

```
 1              yes.
 2    Q    So are you automatically going to answer
 3         Issue Number One yes every time without
 4         listening to the evidence and without
 5         considering the evidence?
 6    A    If the answer to the question before
 7         that which is the guilty verdict is yes,
 8         that he intentionally caused the death
 9         of another person, I would say I would
10         have to answer that question yes.
11                   MR. GUERINOT:  I challenge
12              for cause, Judge.
13                   THE COURT:  Granted.
14                   THE COURT:  You are
15              excused, ma'am.
16
17                   (At this time court is
18                   recessed for the day.)
```

THE STATE OF TEXAS

COUNTY OF HARRIS

I, MARILYN SKINNER, Official Court Reporter in and for the 208th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the proceedings reported by me in the above styled and numbered cause, to the best of my knowledge and belief, all of which occurred in open court or in chambers.

I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY HAND this the *3rd* day of *December* A.D., 1997.

*Marilyn Skinner*
Marilyn Skinner
Official Court Reporter
208th District Court
Harris County, Texas

Certificate No. 689
Date of Expiration: 12-31-98
301 San Jacinto
Houston, Texas 77002
(713) 775-6374

168

CAUSE NO. *72810*

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

---

DUANE EDWARD BUCK

                    Appellant

VS.

THE STATE OF TEXAS,

                    Appellee

---

TRIAL CAUSE NO. 699684
APPEAL FROM THE 208TH DISTRICT COURT
OF HARRIS COUNTY, TEXAS
JUDGE DENISE COLLINS, PRESIDING

---

REPORTER'S RECORD

VOIR DIRE

April 24, 1997

VOLUME   21   OF   30   VOLUMES

MARILYN SKINNER
Certified Official Court Reporter
208th District Court
Harris County, Texas

FILED IN
COURT OF CRIMINAL APPEALS

JAN 5  1998

Troy C. Bennett, Jr., Clerk

## CHRONOLOGICAL INDEX

PAGE

VOLUME  21 - VOIR DIRE, APRIL 24, 1997,

APPEARANCES                                            2

PROSPECTIVE JURORS:

CHARLES MILLER

    Voir Dire by the Court                          4

    Voir Dire by Ms. Huffman                        8

    Voir Dire by Mr. Easterling                    33

    JUROR ACCEPTED                                 40

    JUROR SWORN                                    41

ANTHONY THOMAS

    Voir Dire by the Court                         43

    Voir Dire by Ms. Huffman                       47

    Voir Dire by the Court                         54

    Voir Dire by Ms. Huffman                       55

    PROSPECTIVE JUROR OUT OF COURTROOM             59

    PROSPECTIVE JUROR IN COURTROOM                 60

    Voir Dire by Mr. Guerinot                      60

    Voir Dire by Ms. Huffman                       63

    Voir Dire by Mr. Guerinot                      64

    Voir Dire by Ms. Huffman                       68

    Voir Dire by the Court                         71

    JUROR EXCUSED FOR CAUSE                        73

PAGE

VOLUME 21:

ALICIA PALACIOS

    Voir Dire by the Court    74

    JUROR EXCUSED BY AGREEMENT    76

JUROR NO. 477, MARY GARCIA, EXCUSED BY AGREEMENT    76

TWO NEW JURY PANELS ADDRESSED BY THE COURT    77

JUROR NO. 483, LIONEL VINCENT EXCUSED

    BY AGREEMENT    115

JUROR NO. 496, RAY CHAMBERS, EXCUSED

    BY AGREEMENT    123

JUROR NO. 497, DONALD PEARSON, EXCUSED

    FOR CAUSE    129

JUROR NO. 493, SANDRA CARUTHERS, EXCUSED

    BY AGREEMENT    130

JURORS NOS. 481, 482, 483, 484, 485, 486,

    487, 488, 489, 491, 492, 493, 494, 496,

    497, 498, 499, 500, 501, 502 AND 503

    EXCUSED BY AGREEMENT    132

JUROR NO. 508, LISA ARZU, EXCUSED BY AGREEMENT    135

JUROR NO. 517, KENNETH PAUL, EXCUSED BY AGREEMENT    136

JURORS NOS. 506, 507, 508, 509, 510, 511, 512,

    514, 515, 516, 517, 518, 519, 520, 521, 523,

    524, 525, 526, 527 EXCUSED BY AGREEMENT    142

CHRONOLOGICAL INDEX CONTINUED

PAGE

VOLUME 21:

PROSPECTIVE JURORS:

WILLIAM SCOTT

    Voir Dire by the Court    144

    Voir Dire by Ms. Huffman    151

    JUROR STRUCK BY THE STATE    161

A. C. MADDOX

    Voir Dire by the Court    162

    Voir Dire by Ms. Huffman    166

    Voir Dire by Mr. Guerinot    187

    JUROR STRUCK BY THE DEFENSE    192

COURT RECESSED FOR THE DAY    192

COURT REPORTER'S CERTIFICATE    193

# ALPHABETICAL INDEX

PAGE

VOLUME 21:

MADDOX, A. C.

    Voir Dire by the Court       162

    Voir Dire by Ms. Huffman       166

    Voir Dire by Mr. Guerinot       187


MILLER, CHARLES

    Voir Dire by the Court       4

    Voir Dire by Ms. Huffman       8

    Voir Dire by Mr. Easterling       33


PALACIOS, ALICIA

    Voir Dire by the Court       74


SCOTT, WILLIAM

    Voir Dire by the Court       144

    Voir Dire by Ms. Huffman       151

## ALPHABETICAL INDEX CONTINUED

                                                          PAGE

VOLUME 21:

THOMAS, ANTHONY

    Voir Dire by the Court                43

    Voir Dire by Ms. Huffman              47

    Voir Dire by the Court                54

    Voir Dire by Ms. Huffman              55

    Voir Dire by Mr. Guerinot             60

    Voir Dire by Ms. Huffman              63

    Voir Dire by Mr. Guerinot             64

    Voir Dire by Ms. Huffman              68

    Voir Dire by the Court                71

CAUSE NO. 699684

| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
|---|---|---|
| | ) | |
| VS. | ) | HARRIS COUNTY, T E X A S |
| | ) | |
| DUANE EDWARD BUCK | ) | 208TH JUDICIAL DISTRICT |

APPEARANCES:

FOR THE STATE OF TEXAS:

Ms. Joan Huffman
Assistant District Attorney
201 Fannin
Houston, Texas 77002
Telephone No: (713) 755-5800
SBOT No.: 10296500

Ms. Linda Hood
Assistant District Attorney
201 Fannin
Houston, Texas 77002
Telephone No: (713) 755-5800
SBOT No.: 09943423


FOR DEFENDANT:

Mr. Danny K. Easterling
Attorney at Law
1018 Preston, 6th Floor
Houston, Texas 77002
Telephone No.: (713) 228-4441
Fax No. (713) 228-4072
SBOT No.: 01472017

Mr. Jerry Guerinot
Attorney at Law
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Phone: (713) 225-0094
Fax No.: (713) 225-0099
SBOT No.: 08571500

BE IT REMEMBERED that upon the 24th day of April, 1997, the above entitled and numbered cause came on for voir dire before the Honorable Denise Collins, Judge presiding in the 208th District Court of Harris County, Texas; and both the State and the Defendant, appearing in person and/or by counsel, the following proceedings were had, viz.:

was called as a prospective juror and, having been first duly sworn, testified as follows:

## VOIR DIRE EXAMINATION

BY THE COURT:

Q   Good morning, Mr. Miller.

A   Good morning.

Q   I'm sure you remember what I spoke to you about yesterday but just to refresh your memory, I'll review a little bit with you.  Then the lawyers will talk to you, and before you leave you'll know whether or not you're going to be on this jury.  There will be a lot of talking about the trial process and you will be given an overview of the capital murder process.

Q   Let me ask you this question before we begin.  Do you have any religious, moral, or conscientious scruples against the death penalty in a proper case?

A   No.

Q   You seem to have a hesitation.

A   Well, after your talk yesterday, I was

1    thinking about it.  I always felt it was

2    an appropriate sentence but I never have

3    been close to it.  It struck me as being

4    such a huge responsibility.

5    Q    But the threshold question is do you

6         have any personal feelings against it?

7    A    No.

8    Q    As I told you yesterday, the case is

9         potentially a two-part trial.  We first

10        have the guilt-innocence stage of the

11        trial, and if the jury finds the

12        defendant guilty, then we go on to the

13        punishment stage.  In a capital murder

14        case, there are only two possible

15        punishments should the defendant be

16        convicted, and that's either life or

17        death.

18              Do you understand that?

19   A    Yes.

20   Q    You will have heard a great deal of

21        evidence at the guilt or innocent stage

22        of the trial regarding the offense

23        itself.  If you find the defendant

24        guilty and you're at the punishment

25        stage of the trial, you may hear

                                              5

1  additional evidence regarding issues

2  that may not have been relevant to guilt

3  or innocence but are relevant to the

4  punishment issues. If you do, you take

5  all of the evidence that you have as

6  jurors and use those in answering the

7  questions up here to your left that I

8  discussed with you yesterday.

9  Please take a moment and re-read

10  the first one to yourself. I believe I

11  discussed with you yesterday that that

12  question suggests that you're predicting

13  what the defendant would probably do in

14  the future. Would you agree with that?

15  A  Yes.

16  Q  The State bears the same burden of proof

17  on that question as they did at the

18  guilt-innocence stage of the trial. In

19  other words, before you can answer it

20  yes, you have to believe beyond a

21  reasonable doubt that there is a

22  probability that the defendant would

23  commit future acts of violence.

24  If you believe that the State

25  has failed to meet that burden, you have

6

to answer no. If you answer no, I would

sentence the defendant to life.

        If you believe from the evidence

that the answer to that question should

be yes, then the jury goes on to

consider the second question or the

second issue. Would you read that?

There is no burden of proof on that

question. The law allows you to take

into consideration all of the evidence

that you've heard at the guilt-innocence

stage of the trial and any evidence you

may have gotten at the punishment. That

could include evidence about the

defendant's background, his mental

history, his social history, drug abuse,

criminal history if there is any,

whatever evidence you have. You can

take all that into consideration when

answering that issue.

        At this point you've answered

yes to the first question, that he is a

continuing threat to society. Then you

have to decide if there are sufficient

mitigating circumstances to warrant that

1    a life sentence be more appropriate than

2    the death sentence. In answering that

3    question, you can't answer it based on

4    sympathy or gut feelings. It has to be

5    based on the evidence.

6          If the jurors believe based on

7    the evidence that the answer to that

8    question should be yes, that would

9    result in a life sentence even though

10   you've answered the first question yes.

11   A no answer to that question would

12   result in the death penalty. A yes

13   answer to the first question and a no

14   answer to the second question would

15   result in the death penalty.

16          Do you have any questions about

17   the procedure?

18   A    No.

19   Q    The lawyers will talk to you at this

20        time.

21

22              VOIR DIRE EXAMINATION

23   BY MS. HUFFMAN:

24   Q    My name is Joan Huffman. I along with

25        Linda Hood are Assistant District

1    Attorneys.  It is our job at this time
2    to try to find out a little bit about
3    how you feel about some of the issues
4    that you would have to consider if you
5    were chosen to be a juror in this case.
6    It's very important that you be as
7    candid with us as you possibly can be.
8    By the answers you've given to Judge
9    Collins, it's obvious that you will do
10   that.
11        You can see how important it is
12   for the State of Texas as well as for
13   the Defense to know exactly where you
14   stand on those issues.  You remember
15   that you can't say anything wrong.  You
16   won't get in any trouble for your
17   feelings.  You've taken an oath to tell
18   the truth and that's it.  We're only
19   interested in your honest answers.
20        If you're chosen to be on the
21   jury, you would take another oath to a
22   true verdict render according to the law
23   and the evidence so help you God.
24   That's an entirely different oath.  Once
25   you take that oath, you're obligated to

9

base your verdict on the evidence and
the law in the case. That's why we go
through all of this so carefully so that
jurors do understand what their job here
is going to be. That's also why it's so
important we know how you really feel.

I'm sure it's clear to you at
this point that the State's objective in
this case is to seek the death penalty
for Mr. Buck. Mr. Buck is that man over
there in the pink shirt. You saw him
yesterday and you can see him today. We
intend to prove that he's guilty of
capital murder, and secondly, that Issue
Number One should be answered yes. In
other words, we intend to prove to you
that he would be a continuing threat to
society. We believe the evidence will
show that Issue Number Two should be
answered no, that there is no mitigating
evidence to warrant a life sentence
rather than the death sentence.

You know from Judge Collins that
the result of all that would be that Mr.
Buck would be sentenced to death by the

```
 1              Court.  You do understand that?
 2        A     Yes.
 3        Q     Let's talk about what that means.
 4              You're an informed person.  You know
 5              that at some point Mr. Buck will be
 6              executed by lethal injection.  You're
 7              aware of that, aren't you?
 8        A     Yes.
 9        Q     That means he would be strapped to a
10              gurney and they would inject a lethal
11              injection into his body that would cause
12              him to die.  That's what the State of
13              Texas wants in this case.
14                   The reason I'm going through
15              this with you is I want to make it
16              perfectly clear to you what we're asking
17              you to do, what we're asking you to play
18              a part in which is one of the twelve
19              most important roles played in this
20              courtroom.  It's the jury that makes the
21              ultimate decision.  Do you understand
22              that?
23        A     Yes.
24        Q     You exhibited a bit of hesitation with
25              Judge Collins.  I'd like to discuss that
```