UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUANE EDWARD BUCK, | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | No. H-4:04-cv-03965 |
| | § | |
| DOUG DRETKE, Director | § | |
| Texas Department of | § | |
| Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT DRETKE'S ANSWER AND
## MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

Petitioner Duane Edward Buck was properly convicted and sentenced to die in Texas state court for capital murder for killing Kenneth Butler and Debra Gardner in the same criminal transaction.  He now challenges his presumptively valid conviction and sentence in this Court pursuant to 28 U.S.C. §§ 2241 & 2254.  However, Buck has failed to demonstrate that he is entitled to federal habeas relief for the reasons stated herein and his petition should be denied with prejudice.

### BUCK'S ALLEGATIONS

The Respondent Doug Dretke ("the Director") understands Buck to raise the following grounds for federal habeas relief:

1.    Buck was denied his constitutional due process rights by the trial court's refusal to inform the jury of, or permit expert testimony on, Buck's parole ineligibility for forty years if sentenced to life, which significantly hindered his

ability to meet or rebut the State's arguments that Buck would probably commit future criminal acts of violence.

2. Buck was denied his constitutional rights prohibiting cruel and unusual punishment by the trial court's refusal to inform the jury of, or permit expert testimony on, Buck's parole ineligibility for forty years if sentenced to life, which prevented Buck from offering relevant evidence in mitigation of the death penalty.

3. Buck was denied his constitutional due process rights by the trial court's refusal to inform the jury of, or permit expert testimony on, Buck's parole ineligibility for forty years if sentenced to life, which prevented Buck from producing relevant and reliable evidence that he was not likely to commit future acts of criminal violence.

4. Buck was denied effective assistance of trial counsel due to counsel's failure to request a lesser included offense instruction.

5. Buck's constitutional rights to due process, equal protection, a fair and impartial jury, and prohibiting the use of cruel and unusual punishment were violated when expert testimony was received during the punishment phase of trial that African-American offenders are statistically more likely to be a continuing threat to society than are offenders of other racially distinct groups, thus encouraging the jury to use Buck's race as an aggravating factor in sentencing him.

6. Buck received ineffective assistance of trial counsel because counsel elicited expert testimony before the jury that offenders of Buck's race are statistically more likely to be a continuing threat to society than are offenders of other racially distinct groups.

7. The Texas death penalty statute is in direct conflict with the Supreme Court's decisions in *Ring v. Arizona* and *Blakely v. Washington*, and thus violates Buck's due process rights because the prosecution does not have to prove the future dangerousness special issue beyond a reasonable doubt.

8. The Texas death penalty statute violates *Blakely v. Washington* because the prosecution is not required to negate Buck's evidence of mitigation beyond a reasonable doubt.

2

However, as discussed more fully below, all eight requests for relief must fail. Buck's

constitutional claims must be rejected because either his claims are procedurally defaulted

or he has failed to demonstrate that the state court's adjudication of those claims was contrary

to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court. Therefore, Buck is not entitled to federal habeas corpus relief.

## STATEMENT OF CASE

Buck was convicted and sentenced to death in the 208th Judicial District Court of

Harris County for murdering Kenneth Butler and Debra Gardner during the same criminal

transaction on July 30, 1995. CR 12.[1] The Texas Court of Criminal Appeals affirmed

Buck's conviction and sentence in an unpublished opinion issued on April 28, 1999. *Buck*

*v. State,* No. 72,810 (Tex. Crim. App. 1999). Buck did not file a petition for writ of certiorari

in the United States Supreme Court.

Concurrent with his direct appeal, Buck filed an application for habeas relief in the

trial court on March 22, 1997. 1 SHTr 77.[2] On July 23, 2003, the trial court adopted the

proposed findings of fact and conclusions of law submitted by the respondent recommending

that relief on Buck's application be denied. 1 SHTr 126-27. However, before the trial court

disposed of Buck's initial state habeas application but after the deadline for filing had passed,

---

[1]      "CR" refers to the clerk's record of pleading and documents filed with the court during trial. "RR" refers to the reporter's record of transcribed trial proceedings, preceded by volume number and followed by page numbers.

[2] "SHTr" stands for the state habeas transcript preceded by a number indicating whether it refers to Buck's first or second state application, and followed by the relevant page numbers.

3

Buck filed a subsequent state habeas application on December 13, 2002.  2 SHTr 2.  On

January 23, 2003, the trial court found  Buck's second petition to be a subsequent application

and entered an order directing the clerk to immediately send it to the Texas Court of Criminal

Appeals.  2 SHTr 18-19.  On October 15, 2003, the Texas Court of Criminal Appeals entered

a *per curiam* order disposing of both of Buck's state writ applications:  adopting the trial

court's findings in regard to his first and dismissing the second as an abuse of the writ.  *Ex*

*parte Buck,* Nos. 57,004-01, -02 (Tex. Crim. App. 2003) (per curiam) (unpublished order).

The instant federal habeas petition followed.

## STATEMENT OF FACTS

### I.    Facts of the Crime

The Court of Criminal Appeals summarized the facts of Buck's crime as follows:

> During the early morning hours of July 30, 1995, Harold Ebnezer, his brother
> Kenneth Butler, Buck's sister Phyllis Taylor, and Debra Gardner all gathered at
> Gardner's house after a night out playing pool.  Buck had lived in the house with
> Gardner on and off over the last few years.  Gardner and Buck had broken up two or
> three weeks prior to the commission of the instant offense.
> At some point during the morning's socializing, there was a loud banging at
> Gardner's door and Gardner immediately called "911".  Buck then forced the door
> open and entered the house.  Buck argued with Gardner and struck her.  Buck then
> commented that he was there to pick up his clothes.  Buck retrieved a few of his
> possessions and left sometime thereafter.  Around 7:00 in the morning, Buck returned
> with a rifle and a shotgun.  Upon entering, Buck shot at Ebnezer, but missed and
> Ebnezer managed to flee the house.  Buck then walked up to Taylor, put the muzzle
> of one of the guns against her chest and shot her.  Taylor ultimately survived the
> blast.
> Taylor testified at trial that after she was shot, she heard more shots coming
> from the area of the bedrooms.  As she made her way through the house, she saw
> Butler's body in the hallway.  Ebnezer told the jury that he also heard two or three
> more shots fired inside the house after he managed to get outside.  Ebnezer further
> testified that as he came around to the front of the house, he saw Gardner moving
> toward the street with Buck following her.

Devon Green, Gardner's son, hid in the closet upon hearing the first gunshot. Shortly thereafter, he heard Buck's voice in the hall accusing Butler of sleeping with "his wife" followed by another gunshot. After a couple of minutes, Green looked out into the hall and saw Butler leaning against the wall bleeding. He then ran outside and saw Buck shoot his mother. Green then saw Buck put two guns in the trunk of his car. Gardner's teenage daughter, Shennel Gardner, also saw Butler in the hallway shortly after he had been shot and then went outside only to see Buck shoot her mother.

When police arrived on the scene, both Green and Ebnezer pointed Buck out as the shooter. Police subsequently retrieved a shotgun and a .22 caliber rifle from the trunk of Buck's car.

*Buck v. State,* No. 72,810 at 2-3 (footnotes omitted).

## II.    Facts Relating to Punishment

At the punishment phase, the State presented its case that Buck both acted deliberately and would likely commit future acts of criminal violence. Specifically, the State introduced Buck's prior criminal history that included convictions for delivery of cocaine and for unlawfully carrying a weapon. 28 RR 5-28. Further, the State introduced the testimony of Vivian Jackson, Buck's former girlfriend, who testified that Buck had beaten and abused her. 28 RR 31-40. Finally, the State introduced testimony that after being arrested and given his *Miranda* warnings, Buck was laughing and remarked that he had given the "bitch" what she deserved. 28 RR 67-69.

In contrast, the defense tried to portray Buck as not violent and unlikely to commit further crimes especially in a prison environment. The defense called several witnesses, including family members and Buck's pastor who all testified that they had never known Buck to be violent. 28 RR 83-96. Further, Buck called two experts who each opined that in prison Buck was unlikely to commit additional crimes. Specifically, Buck called Dr.

5

Walter Quijano, former chief psychologist for the Texas prison system (28 RR 101-02) and

Dr. Patrick Lawrence, also a psychologist, who specializes in trying to predict future criminal

behavior.   28 RR 177, 182-85.   The essence of both experts's opinions was that various

statistical factors including Buck's age, the facts of the crime he committed, and the prison

environment all indicated that he would not be a continuing threat to society and was a good

candidate for a life sentence. 28 RR 109-19, 186-206.   The specifics of Dr. Quijano's

testimony relevant to Buck's claims are set forth below with the discussion of his claims.

## STATE COURT RECORDS

Copies of the records from Buck's state trial, direct appeal, and habeas corpus

proceedings were previously sent to this Court in June of 2005.

## ANSWER

### I.      Standard of Review

A party seeking a summary judgment "bears the initial burden of 'informing the

district court of the basis for the motion, and identifying those portions of the [record] which

it believes demonstrate the absence of a genuine issue of material fact.'"   *Taita Chem. Co.*

*v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986)).   However, once the movant presents a properly supported motion

for summary judgment, "the burden shifts to the nonmoving party to show with 'significant

probative evidence' that there exists a genuine issue of material fact."   *Hamilton v. Segue*

*Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F3d 1285,

1295 (5th Cir. 1994)).  Here, the record developed in the state courts shows that the Director is entitled to judgment as a matter of law.

In federal habeas cases, the parties's summary judgment burdens must be viewed under the deferential scheme of the 1996 amendments to the federal habeas corpus statute embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (overruled on other grounds) (establishes that motions for summary judgment are construed differently in habeas cases than other civil cases pursuant to the presumption of correctness).   Therefore, this proceeding is governed by the AEDPA, which states in relevant part that:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2005);  *Riddle v. Cockrell,* 288 F.3d 713, 716 (5th Cir. 2002).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result.  *(Terry) Williams v.*

*Taylor,* 529 U.S. 362, 405-06 (2000); *Hernandez v. Johnson,* 248 F.3d 344, 346 (5th Cir. 2001).  Alternatively, a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case.  *(Terry) Williams,* 529 U.S. at 407-09; *Hernandez,* 248 F.3d at 346.

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  *(Terry) Williams,* 529 U.S. at 409-11; *Tucker v. Johnson,* 242 F.3d 617, 620 (5th Cir. 2001).  Rather, federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable, "[w]hether or not [this Court] would reach the same conclusion."[2]  *Woodford v. Visciotti,* 537 U.S. 19, 27 (2002); *(Terry) (Terry) Williams,* 529 U.S. at 411; *Martin v. Cain,* 246 F.3d 471, 476 (5th Cir. 2001).  Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness,

---

[2]     As the Supreme Court has explained:

[T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

"not every jot of its reasoning." *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001); *see also Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding that a federal court's "focus on the 'unreasonable application' test under section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence").

Additionally, the AEDPA provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Finally, "in addition to performing any analysis required by the AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague*[3] analysis when the issue is properly raised by the [S]tate." *Horn v. Banks,* 536 U.S. 266, 272 (2002).

## II.   Buck's Claims Regarding the Unconstitutionality of the Trial Court's Refusal to Inform the Jury of Buck's Parole Ineligibility for Forty Years if Given a Life Sentence Are Foreclosed by Precedent. (Claims 1-3)

Buck claims that the trial court's refusal to inform the jury of the consequences of a life sentence, specifically that he would be ineligible for parole for forty years, or to permit expert testimony on that fact resulted in multiple violations of his constitutional rights.

---

[3]   *Teague v. Lane,* 489 U.S. 288 (1989).

Petition at 8-36.  Specifically, he claims this action violated his due process rights under the Fourteenth Amendment; his right to be free from cruel and unusual punishment under the Eighth Amendment; and his right to compulsory process under the Sixth Amendment.  *Id.* Chiefly, he claims that these violations resulted from his inability to introduce relevant evidence regarding the future dangerousness and mitigation special issues.  *Id.*  In support of his arguments, Buck relies upon *Simmons v. South Carolina*, 512 U.S. 154 (1994).  *Id.* However, Buck's reliance upon *Simmons* is misplaced and foreclosed by precedent, and he has not and cannot demonstrate that the state courts unreasonably denied him relief.

Buck argues that the trial court's refusal to inform the jury of Buck's parole ineligibility for forty years constitutes a denial of his Eighth Amendment and due process rights.  Petition at 8-36.  He argues that *Simmons* is not only applicable to states with a life-without-parole option because informing jurors of a capital defendant's parole ineligibility for forty years "does not provide any information about parole or encourage jurors to speculate about whether parole will ultimately be granted."  *Id.* at 20.  Thus, he argues that in terms of its probative value it is "indistinguishable from the instruction to which Simmons was entitled."  *Id.* at 20-21.  However, Buck's interpretation of *Simmons* is mistaken.  While the Supreme Court in *Simmons* did, in fact, find that the actual duration of a capital defendant's prison term is "indisputably relevant" in assessing future dangerousness, it also reaffirmed that states are generally free to decide whether a capital sentencing jury should be informed of the possibility of a defendant's early release.  *Id.* at 163, 168.  Thus, only

where life without parole is the *sole* alternative to a death sentence, *and* future dangerousness is an issue, does due process actually require the jury to be informed of the defendant's parole eligibility. *Id*. at 153. (O'Connor and Kennedy, JJ., concurring) (emphasis added).

The rule set out in *Simmons* does not, therefore, apply to states such as Texas where life without parole is not a sentencing option in capital cases, however much Buck might argue to the contrary.[4] The *Simmons* Court stated that,

> In a State in which parole is available, how the jury's knowledge of parole eligibility will affect the decision whether or not to impose the death penalty is speculative, and we shall not lightly second-guess a decision whether or not to inform the jury of information regarding parole.

*Id*. at 168. Thus, the language of *Simmons* makes clear that the case did not invalidate Texas's prohibition against informing juries about the parole implication of a life sentence in capital cases. Moreover, the Supreme Court has confirmed in two subsequent opinions that the *Simmons* holding applies only where life without parole is the only available alternative to the death penalty, cases which Buck fails to mention. *See Ramdass v. Angelone*, 530 U.S. 156, 165 (2000); *Shafer v. South Carolina*, 532 U.S. 36, 48-52 (2001).

Federal habeas relief on this claim is further precluded under circuit precedent that has repeatedly rejected the merits of these claims. *See Hughes v. Johnson*, 191 F.3d 607, 617

---

[4]    *See id*. at 167-68 & nn. 7-8 (noting that, while Texas traditionally has prohibited informing juries about a capital defendant's parole eligibility, life without parole is not a sentencing alternative in Texas). However, effective September 1, 2005, Texas will offer life-without-the-possibility-of-parole as a capital murder sentencing option, replacing the current 40-year parole eligibility option. *See* Tex. Penal Code § 12.31(a), as amended by SB 60 (signed by Governor Rick Perry June 17, 2005). Obviously, this law does not apply to Buck.

(5th Cir. 1999); *Muniz v. Johnson*, 132 F.3d 214, 224 (5th Cir. 1998); *Montoya v. Scott*, 35 F.3d 405, 417 (5th Cir. 1995). The Fifth Circuit has held that where Texas did not statutorily provide for parole ineligibility for life at the time of the petitioner's conviction, due process does not require the sentencing jury to be informed of the number of years a defendant must serve under a life sentence before becoming eligible for parole. *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994). Therefore, Buck's arguments that his constitutional rights were violated is contrary to binding precedent.

Finally, Buck's claim is also barred under the principles of *Teague* which dictate that, unless an exception applies, new rules of constitutional criminal procedure will not apply to cases where the convictions became final before the new rule was announced. 489 U.S. at 316. The Fifth Circuit has stated that,

> If we were to conclude...that due process entitles a capital defendant to introduce evidence of parole ineligibility whenever the state argues that the defendant is a future danger, regardless of whether the state statutorily provides for parole ineligibility, such a conclusion would constitute a "new rule" and, therefore, would be barred under *Teague*.

*Allridge*, 41 F.3d at 222, n. 11.

Thus, Buck has failed to demonstrate any constitutional violations much less the unreasonable denial of relief by the state courts that would entitle him to relief in this Court. As such, this claim should be dismissed.

### III.   Buck's Ineffective Assistance of Counsel Claim Is Without Merit.  (Claim 4)

#### A.   Standard of Review

The burden of proof in a habeas corpus proceeding attacking the effectiveness of counsel is on the petitioner, who must demonstrate both ineffectiveness and resultant prejudice. *Carson v. Collins*, 993 F.2d 461, 466 (5th Cir. 1993).  The familiar standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88.  In so doing, a convicted defendant must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992).

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692.  In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694;  *Loyd*, 977 F.2d at 159.  This showing of prejudice must be "rather appreciable"; thus, a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202,

206 (5th Cir. 1994). Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland,* 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

### B. Buck wholly fails to prove any merit to his claim since the law he relies upon in claiming entitlement to a lesser-included-offense instruction was repealed before he committed the offense.

Buck next argues that his lawyer was ineffective for failing to request that a lesser-included-offense instruction be included in the court's guilt-innocence jury charge, specifically that of voluntary manslaughter. Petition at 36-55. In support of his argument, Buck extensively discusses the *Strickland* standard of review, the corollary *Cronic* standard[5], the effect of the Supreme Court's decision in *(Michael Wayne) Williams v. Taylor*,[6] and the case law history of the voluntary manslaughter defense which "applied to the case of homicide committed 'under the immediate influence of sudden passion arising from an adequate cause.'" *Id.* However, what Buck does not discuss is how he is entitled to an instruction based on a law that was repealed and no longer in effect at the time he committed

---

[5]    *United States v. Cronic,*466 U.S. 648 (1984), outlining the rare cases where counsel's actions are so egregious as to presume prejudice. *See also Bell v. Cone,* 535 U.S. 685 (2002) (further delineating when the *Cronic* standard is properly applied). Specifically, the Supreme Court held that the *Cronic* presumption of prejudice applies only when either (1) there was a complete denial of counsel, such as when the accused was denied the presence of counsel at a critical stage; (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; or (3) counsel was called upon to render assistance under circumstances where competent counsel very likely could not. *Bell,* 535 U.S. at 695-96, *Cronic,* 466 U.S. at 659-60.   As is evident none of these situations occurred in the present case.

[6]    529 U.S. 420 (2000).

his crime.  Buck also does not show how counsel was deficient in failing to obtain a jury instruction to which Buck was not entitled by law.  Finally, Buck does not show how the state courts's unreasonably applied clearly established federal law in denying him relief.  Given these incredible failures to show any entitlement to relief, Buck's ineffective assistance of counsel claim should be denied.

Buck asserts that he raised this claim on both direct appeal and state habeas.  Petition at 36-37.  However, Buck is mistaken in that no mention of ineffective assistance of counsel for failing to request a lesser-included-offense instruction exists in his appellate brief.[7]  *See* Appellant's Brief on Appeal.  Thus, it is not surprising that the Court of Criminal Appeals failed to address this issue in its opinion.  *Buck v. State,* No. 72,810.  However, Buck is correct in that this claim was raised on state habeas review.  Nevertheless, Buck fails to show that any of the state court's factual findings are contrary to his clear and convincing evidence or that their denial of relief was an unreasonable application of clearly established Supreme Court law.  Indeed Buck makes no arguments on these points at all.  Rather, Buck extensively summarizes the facts of his case and Texas case law on voluntary manslaughter after his extensive review of Supreme Court jurisprudence on the standards for constitutionally adequate counsel.  However, the facts remain as found by the state habeas court and adopted by the Texas Court of Criminal Appeals that Buck is not entitled to relief.

---

[7]      It is certainly not point of error number two which instead complains that Buck was unconstitutionally interrogated and thus his statement should have been suppressed.

First, the state habeas court found that Buck committed the murders on July 30, 1995. 1 SHTr 123 (#20). The record supports this finding and Buck offers no contrary evidence. CR 12, 203-04. Next, the court found that Texas Penal Code § 19.04 defining voluntary manslaughter as homicide committed under the influence of sudden passion was repealed effective September 1, 1994. 1 SHTr 123 (#24). Texas law archives support this and again Buck offers no contrary argument. *Compare* TEX. PENAL CODE § 19.04 (West 1994) *with* TEX. PENAL CODE § 19.04 (West 1995). Finally, the court concluded that under the existing law of 1995, counsel was limited to arguing sudden passion as a mitigation issue at the punishment phase of trial which the court found he did. 1 SHTr 123-24 (23, 25-26). Again both the record and the law support the state habeas court's findings. These findings were adopted by the Texas Court of Criminal Appeals and are entitled to the deferential considerations of the AEDPA. 28 U.S.C. § 2254(e)(1). As such, Buck cannot show that he is entitled to relief.

However, even without this deferential standard of review, Buck cannot possibly show that his counsel was deficient, much less the second prong of ineffectiveness, for failing to request an instruction based on law that no longer existed. Indeed, it is apparent that Buck did not even try. For these reasons, Buck has failed to show he is entitled to federal habeas relief and this claim should be denied.

16

## IV.    Buck's Claims Regarding Dr. Quijano's Testimony Are Procedurally Defaulted. (Claim 5-6)

In his fifth ground for relief, Buck claims that his constitutional rights to due process and equal protection were violated by the punishment phase testimony of his own expert. Specifically, he complains that defense expert, Dr. Quijano, testified that African-American offenders are statistically more likely to be a continuing threat to society than other racially distinct groups.  Petition at 55-62.  Relatedly, in his sixth ground, Buck also claims that his trial counsel was ineffective for eliciting this testimony.  *Id.*   However, Buck has procedurally defaulted these claims by failing to properly present them to the state courts. Further, Buck fails to acknowledge let alone account for his default, and thus, does not present any of the exceptions necessary to overcome these bars.  As such, Buck is not entitled to federal habeas relief.  This Court is no doubt aware that the Director waived similar procedural bars and confessed error in other cases involving testimony by Dr. Quijano, most notably the case of Victor Hugo Saldano (collectively referred to as "the *Saldano* cases"). *See Saldano v. Cockrell,* 267 F. Supp. 2d 635,  639-40 (especially n. 3) (E.D. Tex. 2003). This case, however, presents a strikingly different scenario than that presented in *Saldano*–Buck himself, not the State offered Dr. Quijano's testimony into evidence.  Based on this critical distinction, the Director deems himself compelled to assert the valid procedural bar precluding merits review of Buck's constitutional claims.  And on this basis, federal habeas relief should be denied.

### A.    Facts Relating to Buck's Claim

At the punishment phase of trial it was Buck who called Dr. Quijano to testify.  28 RR 101.  Specifically, it was Dr. Quijano's expert opinion that Buck would not be a continuing danger to society that Buck hoped would impress the jury.  He made a point of emphasizing Dr. Quijano's extensive experience, his past position as Chief Psychologist and Director of Psychiatric Services for the Texas prison system, and his involvement in seventy other capital murder cases. 28 RR 101-104.  He also emphasized that Dr. Quijano often testified for the prosecution and, in fact, testified pretty evenly for both the defense and prosecution. 28 RR 104-05.  As noted above, Buck's chief reason for calling Dr. Quijano was his opinion that Buck was unlikely to reoffend.  28 RR 115.

Dr. Quijano based this opinion on his conclusion that Buck suffered from a dependent personality disorder, a number of statistical factors, environmental considerations, and Buck's lack of a violent criminal history.  28 RR 106-15.  In discussing these various considerations, Dr. Quijano spent four and a half pages of testimony on Buck's mental condition and personality disorder.  28 RR 105-09.  Several pages are devoted to Buck's criminal history and behavior while incarcerated.  28 RR 111-15  In contrast, his entire testimony concerning relevant statistical factors spans not even a page and a half, which includes a discussion of age, sex, race, social economics, and substance abuse. 28 RR 110-11.  In fact, Dr. Quijaino's entire testimony concerning race is as summarized below:

18

**Defense Counsel**:   I want to talk about that[8] with you for a moment.  I'm going to ask your professional opinion regarding Mr. Buck in relation to that issue.

If we have an inmate such as Mr. Buck who is sentenced to life in prison, what are some of the factors, statistical factors or environmental factors that you've looked at in regard to this case?

28 RR 109-110.

**Dr. Quijano**:   [After reviewing factors of past criminal behavior, age and sex].  Race.  It's a sad commentary that minorities, Hispanics and black people, are over represented in the Criminal Justice System.

28 RR 111 (lines 1-4).  Then on cross-examination by the State:

**State**:   You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that the race factor, black, increases the future dangerousness for various complicated reasons; is that correct?

**Answer**:   Yes.

28 RR 160 (lines 8-15).   Therefore, the testimony that Buck claims entitles him to relief–despite his failure to ever properly bring this alleged error before the state courts or to object at trial–spans at most only eight lines of testimony, half of which he introduced in his defense at trial.

---

[8]   The issue referenced is the future dangerousness of the defendant.  *See generally* 28 RR 109.

### B.   Buck's case is distinguishable from *Saldano*.

As discussed above, the Director is obviously aware of the prior confessions of error in other federal habeas corpus cases involving similar testimony by Dr. Quijano.  *Saldano*, 267 F. Supp. 2d at 639, n. 3.  However, this case is *not Saldano*.  In Saldano's case Dr. Quijano *testified for the State*.  *Id*. at 638.  Thus, it was the State that introduced evidence that Hispanics were more likely to be a continuing threat to society and urged the jury to consider evidence of Saldano's race and ethnicity in making a determination of future dangerousness. *Id.*  This obvious violation of Saldano's equal protection rights was repugnant to the administration of justice.  However, there are many things the defense can do that the prosecution cannot, chief among them is compelling the defendant to testify.  Such restrictions on the State's powers, methods and means are necessary to protect a defendant's constitutional rights, but a constitutional violation would also occur if a defendant's ability to defend himself was improperly restricted.  Therefore, because it was Buck who called Dr. Quijano to testify and derived the benefit of Dr. Quijano's overall opinion that Buck was unlikely to be a future danger despite the existence of some negative factors, this case does not represent the odious error contained in the *Saldano* cases.[9]  As such, the former actions of the Director are not applicable and should not be considered in deciding this case.

---

[9]   Interestingly, at least one other circuit has found that testimony concerning a defendant's race is admissible when part of an extensive list of factors and when other evidence apart from those factors is used to make a determination that a defendant will or will not be a future danger, even when introduced by the State.  *United States v. Barnette*, 211 F.3d 803, 816 (4th Cir. 2000).

**C.    Buck's claims are procedurally defaulted by his failure to properly preserve error by failing to timely present his claims to the state courts for review and by his failure to object at trial.**

It is well settled that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *Harris v. Reed*, 489 U.S. 255, 262 (1989). Thus, federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.[10] *Coleman*, 501 U.S. at 729 (1991); *Harris*, 489 U.S. at 265; *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).

As noted above, Buck did not raise the instant claims until his second state habeas application, which was dismissed as an abuse of the writ. *Ex parte Buck,* No. 57,004-02 at 2-19 & Order combined with No. 57,004-01 (Tex. Crim. App. Oct. 15, 2003) (per curiam) (citing Tex. Code Crim. Proc. art. 11.071 §5). Thus, the state court's dismissal of his claims as an abuse of the writ precludes federal habeas relief as a matter of law. *See Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (holding that pre-11.071 abuse of the writ doctrine was strictly and regularly applied and, thus, was independent and adequate state procedural bar); *Emery v. Johnson,* 139 F.3d 191, 195-96 (5th Cir. 1997) (extending *Fearance* to article 11.071 statutory abuse of writ doctrine); *Barrientes v. Johnson*, 221 F.3d

---

[10]    A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

741, 758-59 (5th Cir. 2000); *Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998); *see also*

*Moore v. Texas,* 535 U.S. 1044, 1047-48 (2002) (Scalia, J., *dissenting*) (recognizing Texas

abuse-of-the-writ statute as independent and adequate state ground).

Further, even if Buck had properly raised these claims before the state courts, he

would still not be entitled to relief on his claims of due process and equal protection

violations.  It is most certain that the state courts would have refused to examine the merits

of these claims due to his failure to properly preserve error.  Error was not properly preserved

because trial counsel did not object to Dr. Quijano's testimony–in fact, it was Buck who

introduced this testimony in his favor during the punishment phase.  The law is equally

well-settled that failure to make a contemporaneous objection as required by state law

constitutes regularly and strictly applied procedural default, further precluding federal review

of these claims.  *Amos*, 61 F.3d at 345;  *Rogers v. Scott* , 70 F.3d 340, 342 (5th Cir. 1995);

*Marks v. Estelle*, 691 F.2d 730, 734 (5th Cir. 1982);  *Thomas v. Estelle*, 587 F.2d 695, 698

(5th Cir. 1979).  As the Fifth Circuit has repeatedly acknowledged, "'the Texas

contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast

majority of similar claims, and is therefore an adequate procedural bar.'"  *Dowthitt v.*

*Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) (quoting *Corwin v. Johnson*, 150 F.3d 467, 473

(5th Cir. 1998)).  Thus, any claim of error has been waived under Texas procedural law and

Buck's constitutional claims regarding the substance of Dr. Quijano's testimony are doubly-

barred.

Further, Buck's default of his claims can only be excused if he can demonstrate (1) cause for the default and prejudice as a result of the alleged violation of federal law, or (2) a resulting "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51. To establish "cause," a habeas petitioner must ordinarily identify circumstances external to the defense that prevented him from properly asserting the claim in state court. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). Ineffective assistance of counsel cannot constitute "cause" unless deficiencies or omissions in counsel's performance both resulted in the default and amounted to constitutionally ineffective assistance of counsel at trial or on direct appeal. *Coleman*, 501 U.S. at 752. Moreover, the requisite showing of "prejudice" is significantly greater than that required to establish plain error. "The habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 493 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). Finally, a petitioner may come within the "fundamental miscarriage of justice" exception, (1) if, as a consequence of the identified constitutional error in the guilt-innocence phase and in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him," *Schlup v. Delo*, 513 U.S. 298, 329 (1995), or (2) if he establishes "by clear and convincing evidence that, but for the constitutional error at his sentencing hearing, no reasonable juror would have found

him eligible for the death penalty" under state law.  *Sawyer v. Whitley*, 505 U.S. 333, 350

(1992).

However, Buck's petition fails to acknowledge that his claims are procedurally

barred[11] much less argue why this Court should review his clearly barred claims.  Thus, Buck

presents no reason that might be considered cause and makes no argument on how he was

prejudiced.  He also does not and cannot make any credible argument that he is actually

innocent of either his crime or the death penalty.

Although the Director does not normally speculate on what might have caused such

a default, it must be noted that Buck's ineffective assistance of counsel claim cannot provide

cause for his abuse of the writ default.  Even if one were to assume that counsel was deficient

for introducing such testimony, as Buck alleges, this does not explain Buck's failure to

present this claim to the state courts in a timely and procedurally correct manner.  Buck also

cannot rely on an ineffective assistance of appellate counsel claim for failing to raise these

claims on direct appeal because Buck has never raised such a claim in any state proceeding.

Thus, any such claim is not only unexhausted but also procedurally barred.  An independent

showing of ineffective assistance of counsel may establish cause to excuse a state procedural

default only where the ineffectiveness claim itself is not defaulted.  *Edwards v. Carpenter*,

529 U.S. 446, 453 (2000).  Finally, Buck cannot rely on any alleged ineffectiveness of state

---

[11]       Buck does admit that these claims were only presented in his second state habeas application which was dismissed for abuse of the writ, but only complains that he was denied "meaningful access" to present his claims to the state courts;  he does not address why his claims should not be barred from federal review.  Petition at 56, n. 14.

habeas counsel because there is no constitutional right to state habeas counsel and accordingly no constitutional right to effective assistance of state habeas counsel. *See Ogan v. Cockrell,* 297 F.3d 349, 357 (5th Cir 2002) (citing *Callins v. Johnson,* 89 F.3d 210, 212 (5th Cir. 1996) ("There is no constitutional right to counsel in habeas proceedings.")). Thus, a state habeas counsel's ineffectiveness cannot form the constitutional violation necessary to establish cause. *Martinez v. Johnson,* 255 F.3d 229, 240-41 (5th Cir. 2001) (citing *Beazley v. Johnson,* 242 F.3d 248, 256 (5th Cir. 2001) and *Jones v. Johnson,* 171 F.3d 270, 277 (5th Cir. 1999) ("The law is well-established . . . that such error committed in a post-conviction application, where there is no constitutional right to counsel, cannot constitute cause.")).

In light of Buck's failure to properly present his constitutional claims to the state courts and the corresponding refusal by those courts to examine his claims on the merits based on independent and adequate state procedural law, Buck is undeserving of federal habeas relief. Moreover, Buck has failed to show any possible excuse for his default let alone the required cause and prejudice. Buck cannot make a showing of actual innocence regarding his conviction or sentence. Thus, Buck's claims should be barred from review and relief denied.

V.      **Buck's Claims that the Texas Death Penalty Scheme is Unconstitutional Are Without Merit.  (Claims 7-8)**

   A.      **Buck's claim that proof beyond a reasonable doubt of a probability of future dangerousness essentially dilutes the burden of proof is unexhausted, procedurally defaulted, and meritless.**

Buck claims that "Tex. Code Crim. Proc. Art. 37.071(b)(1) is in direct conflict with the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584 (2002) and *Blakely v. Washington,* 542 U.S. 296 (2004) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by allowing the prosecution to prove future dangerousness." Petition at 62-72.  Referring to the future dangerousness special issue, Buck argues that "the practical effect of juxtaposing the term 'probability' along side [sic] 'reasonable doubt' is to require only proof by a preponderance of the evidence rather than proof beyond a reasonable doubt." *Id.* at 63.  Buck quibbles with the Court of Criminal Appeals's decision in *Rayford v. State,* 125 S.W.3d 521 (Tex. Crim. App. 2003).  *Id.* at 64-66.  Absent, however, is any mention of what the state courts did with Buck's instant claim, and that is because he is attempting to bypass them entirely.

   1.      **This claim is unexhausted and procedurally defaulted by Buck's failure to ever present it to the state courts.**

On Buck's direct appeal, the only claim relating to the burden of proof for the special issues concerns the mitigation special issue.  *See* Appellant's Brief at 27-43.  Nor does any claim concerning the burden of proof for future dangerousness appear in either of Buck's

state habeas applications.  Therefore, Buck has utterly failed to exhaust this claim in the state courts.

The exhaustion doctrine codified in 28 U.S.C. § 2254(b)(1) reflects a policy of comity consistently adhered to by the Supreme Court and the Fifth Circuit.  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971); *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5th Cir. 2000).  It requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights.  *Castille v. Peoples,* 489 U.S. 346, 349 (1989);  *Anderson v. Harless,* 459 U.S. 4, 6 (1982).  Thus, before a federal court will entertain the alleged errors, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations.  *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).

Moreover, all of the grounds raised in a federal application for writ of habeas corpus must have been "fairly presented" to the state courts prior to being presented to the federal courts.  *Picard v. Connor,* 404 U.S. 270, 275 (1971).  In other words, in order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his assertions.  *Id.* at 275-77.  Further,  "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts

or that a somewhat similar state-law claim was made." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001).  In fact, when a "petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." *Id.* at 259.  To properly exhaust, a state inmate must "present the state courts with the same claim he urges upon the federal courts.'" *Id.* at 261.  Finally, in order to satisfy the exhaustion requirement, the petitioner must not only present his claims to the highest state court, but he must present them in a procedurally correct manner such that the merits will be considered.  *Castille,* 489 U.S. at 351.

As Buck did not raise these claims either on direct appeal or in state collateral review, he has clearly failed to exhaust state court remedies.  It is well settled that habeas relief "shall not be granted" under any circumstances unless it appears that "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1) (West 2005).  It is equally clear, however, that Buck would be barred from raising these claims in a successive state habeas application under Texas Code of Criminal Procedure, Article 11.071, Section 5(a).[12]  "Because [the exhaustion] requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (internal citations omitted); *see also Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Castille,*

---

[12]     Article 11.071, Section 5(a), which became effective September 1, 1995, provides that a state court may not consider the merits of or grant relief on claims presented in a successive state habeas application absent facts giving rise to a statutory exception. Buck has made no showing that one of the Article 11.071 exceptions would apply to allow review of these claims in state court.

489 U.S. at 351; *Graham v. Johnson*, 94 F.3d at 969 ("exhaustion is not required if it would

plainly be futile").  Nonetheless, such an unexhausted claim is subject to denial in federal

court as procedurally defaulted.  Further "[a]lthough AEDPA authorizes a district court to

*deny* relief on an unexhausted claim, it does *not* authorize a district court to *grant* relief on

an unexhausted claim, 'unless the State, through counsel, expressly waives the requirement.'"

*Alexander v. Johnson,* 163 F.3d 906, 908 (5th Cir. 1998) (emphasis added).  Although under

*Harris*, 489 U.S. at 265, federal review of a habeas claim is procedurally barred only if the

last state court to consider the claim expressly and unambiguously based its denial of relief

on a state procedural default,

> [t]his rule does not apply if the petitioner failed to exhaust state remedies and
> the court to which petitioner would be required to present his claims in order
> to meet the exhaustion requirement would now find the claims procedurally
> barred.  In such a case there is a procedural default for purposes of federal
> habeas regardless of the decision of the last state court to which the petitioner
> actually presented his claims.

*Coleman*, 501 U.S. at 735 n. 1.  In the instant case, just as in *Gray*, "the procedural bar which

gives rise to exhaustion provides an independent and adequate state-law ground for the

conviction and sentence, and thus prevents federal habeas corpus review of the defaulted

claim, unless the petitioner can demonstrate cause and prejudice for the default," or that the

federal court's failure to consider the claim will result in a miscarriage of justice.  *Gray*, 518

U.S. at 162 (barring claim on basis that claim would be barred in state court if it were

presented there); *Coleman*, 501 U.S. at 750;  *Nichols v. Scott*, 69 F.3d 1255, 1280 (5th Cir.

1995).

The Fifth Circuit has held that where a petitioner raises claims in federal court that have not previously been presented to the state courts, and Article 11.071, Section 5(a) would foreclose review of those claims if presented in a successive state habeas application, such is an adequate state procedural bar foreclosing federal habeas review of the claims. *Nobles*, 127 F.3d at 422; *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998). Buck does not attempt to distinguish his case from *Nobles* and *Muniz*; nor does he attempt to demonstrate cause and prejudice for his failure to raise the claims in state court and he cannot make a showing of actual innocence. Thus, circuit precedent compels the denial of these claims as procedurally defaulted.

### 2.     Buck's claim is also without merit.

Buck's argument that the future dangerousness special issue submitted to his jury violates *Ring* because the term "probability" as juxtaposed with the prosecution's burden of proof unconstitutionally erodes that "beyond a reasonable doubt" requirement to a mere preponderance of the evidence standard is without merit. Petition at 63-66. Although, as discussed above, Buck never presented this claim to the state courts, even if Buck had, the Texas Court of Criminal Appeals surely would have rejected it. Buck has not shown and cannot show this to be an unreasonable application of clearly established federal law.

*Ring* is an extension of the Supreme Court's non-capital decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court reversed a New Jersey non-capital conviction because the trial court unconstitutionally increased the defendant's sentence

beyond the statutory maximum based on a separate, but unindicted, hate crime statute.  *Id*. at 470-71.  The *Apprendi* Court reasoned that the New Jersey law violated "basic principles" requiring trial to a jury of "all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt."  530 U.S. at 483-84.  Essentially, the firearms statute and the hate crime statute, which increased the maximum penalty, constituted two separate offenses with distinct elements and punishments.  *Id*. at 476.  Thus, historic notions of due process and fair notice demanded that *Apprendi* be apprized of all elements of each offense so that he could prepare his defense accordingly and understand which penalty might result. *Id*. at 478.  New Jersey's transparent attempt to sidestep these requirements and label the hate crime offense as a "sentencing factor" was unconstitutional because it removed from the jury consideration of a substantive element of a distinct crime and lessened the burden of proof on that element.   *Id*. at 490-93.   This effectively transformed a jury conviction of a second-degree offense to the equivalent of a first-degree punishment without jury consideration of the additional factual element.  *Id*. at 491.  The Court rejected this scheme and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id*. at 490.

In *Ring*, the Court applied *Apprendi*, "which held that the Sixth Amendment does not permit a defendant to be 'expose[d] ... to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone,'" to strike down

Arizona's capital sentencing scheme which allowed the trial judge, rather than the jury, to find the aggravating circumstance necessary to impose the death penalty. *Ring*, 536 U.S. at 588-89, 609 (*quoting Apprendi*, 530 U.S. at 483) (emphasis in *Ring*). *Ring* was convicted by a jury of the lesser-included offense of felony murder because the evidence tied him only to the proceeds of an armored car robbery, but not the murder of the driver itself. *Id*. at 591-92. "Under Arizona law, Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made" by a judge alone. *Id*. at 592. During the sentencing proceeding, new evidence led the court to conclude that Ring murdered the armored car driver, and the court sentenced him to death. *Id*. at 594-95.

The Court noted that, "[b]ased solely on the jury's verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment." *Ring*, 536 U.S. at 597. Where an increase in punishment is contingent on an additional finding of fact – in *Ring*, the additional finding was a more culpable mental state – the Constitution requires that the fact must be found by a jury beyond a reasonable doubt. *Id*. at 600-01. Thus, Arizona's sentencing scheme was unconstitutional "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Id*. at 609 (emphasis added).

However, the Supreme Court has long held that the Texas death penalty system is constitutional under the Eighth Amendment because the "death eligibility" determination is made during the guilt/innocence phase, and not through the future danger inquiry. Thus,

*Ring,* a Sixth Amendment case, has had no effect on this jurisprudence.  Further, the Texas system satisfies *Ring* because Texas courts require that the *jury* determine whether the State has shown, *beyond a reasonable doubt*, that the petitioner will present a future danger, before a sentence of death may be imposed.  Buck's jury was clearly instructed to that effect under Texas law.  CR 194, 199.  This Court must presume that the jury followed its instructions. *Zafiro v. United States,* 506 U.S. 534, 540 (1993):  *Galvan v. Cockrell,* 293 F.3d 760, 765 (2002).  Therefore, Buck has failed to demonstrate any constitutional violation under *Ring* or otherwise.

Moreover, Buck's challenge to the term "probability" is also meritless.  Buck contends that the Texas instruction violates *Ring/Apprendi* simply because it incorporates the term "probability," which he states lowers the burden of proof and, consequently, fails to satisfy the "reasonable doubt" requirement.  Petition at 63-66.  Buck's contention is nothing more than a veiled attempt to challenge the use of the word "probability" by framing the issue within the holding of *Ring/Apprendi,* unsupported by any precedent.

Under *Ring*, all that is required is that the sentencing matter be submitted to a jury and proven beyond a reasonable doubt.  Other than this, neither *Ring* nor *Apprendi* say anything about which terms or words must be included in the instructions.  Precise definitions are not a prerequisite to an appropriate sentencing scheme.  The Supreme Court has held,

> Ensuring that a sentence of death is not so infected with bias or caprice is our "controlling objective when we examine eligibility and selection factors for vagueness." Our vagueness review, however, is "quite deferential." As long as an aggravating factor

> has a core meaning that criminal juries should be capable of
> understanding, it will pass constitutional muster.

*Jones v. United States*, 527 U.S. 373, 400 (1999) (*quoting Tuilaepa*, 512 U.S. at 973).

Further, the Court of Criminal Appeals has routinely held that the use of the term

"probability" in the future dangerousness special issue does not lessen the required burden

of proof on the State to prove the issue beyond a reasonable doubt. *Lagrone v. State*, 942

S.W.2d 602, 618 (Tex. Crim. App. 1997); *Robison v. State*, 888 S.W.2d 473, 481-82 (Tex.

Crim. App. 1994); *Kemp v. State*, 846 S.W.2d 289, 309 (Tex. Crim. App. 1992); *Jones v.*

*State*, 843 S.W.2d 487, 496 (Tex. Crim. App. 1992); *Sosa v. State*, 769 S.W.2d 909, 916-17

(Tex. Crim. App. 1989). The Fifth Circuit Court of Appeals has also repeatedly rejected

arguments that words used in punishment phase special issues have such imprecise meanings

that the jury cannot discern what is being asked without a definition of the terms in the jury

instructions. *Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999); *Milton v. Procunier*, 744

F.2d 1091, 1096 (5th Cir. 1984).

Finally, the Supreme Court has long held that the Texas future dangerousness special

issue passes constitutional muster. *Jurek v. Texas*, 428 U.S. 262, 275-76 (1976); *Franklin*

*v. Lynaugh*, 487 U.S. 164 (1988); *Graham v. Collins*, 506 U.S. 461 (1993), *Johnson v. Texas*,

509 U.S. 350 (1993). Indeed, "the issues posed in the sentencing proceeding have a common

sense core of meaning and . . . criminal juries should be capable of understanding them."

*Jurek*, 428 U.S. at 279 (White, J., concurring in judgment). *Ring* did not overrule *Jurek* and

its progeny. Thus, since the future dangerousness special issue has been held to be

constitutional by the Supreme Court, any attack upon its constitutionality would be barred under *Teague* because granting relief on these claims would require the Court to announce and retroactively apply a new rule of constitutional law on federal habeas review.  *See Rowell v. Dretke,* 398 F.3d 370, 379 (5th Cir. 2005) (denying certificate of appealability for claim that the future dangerousness special issue violates the reasonable doubt standard; noting that *Blakely*, *Apprendi*, and *Ring* are not violated by the future dangerousness special issue; and stating that acceptance of the petitioner's argument to the contrary would violate *Teague*).

Thus, considering that Buck's claim is unexhausted, procedurally defaulted, *Teague*-barred and utterly without merit, this Court should deny relief.

### B.     Buck's *Apprendi/Ring/Blakely* claim that the prosecution should negate mitigation beyond a reasonable doubt is without merit.

Buck claims he was unconstitutionally sentenced to death because the mitigation special issue failed to allocate a burden of proof on the State to prove beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant that a sentence of life imprisonment be imposed.  Petition at 66-71.  However, this claim is utterly without merit. Buck's entire *Ring/Apprendi/Blakely* argument is based on a fallacy, *i.e.,* that the *absence* of mitigating circumstances amounts to an aggravating circumstance that increases the maximum penalty for capital murder.

As discussed extensively above, *Ring* and *Apprendi* are inapplicable to the Texas capital sentencing scheme for two reasons.  First, the prescribed statutory maximum penalty for capital murder in Texas is death, and each element of the offense and aggravating

sentencing factor was proved to the jury beyond a reasonable doubt.  Thus, Buck was not denied fair notice or subject to an enhanced sentence based on judicial fact findings.  Second, the absence of sufficient mitigating circumstances is not an element of capital murder and is not an *aggravating* fact that increases the penalty for capital murder.  Rather, the presence of sufficient mitigating circumstances is plainly a *mitigating* fact which allows a defendant to *escape* the maximum penalty for capital murder.  As a result, the Sixth Amendment rationale of *Ring* and *Apprendi* is inapposite to the instant case, and habeas relief should be denied.

As discussed above, the *Apprendi* decision is of no moment here because each of the elements of capital murder were indicted, submitted to the jury, and proven beyond a reasonable doubt as a prerequisite to reaching the punishment phase of Buck's trial.  Buck was certainly on notice of each of these elements, which are set forth in the Texas capital murder statute and  were tracked in the indictment as well as the court's guilt-innocence charge.  *Compare* TEX. PENAL CODE §§ 19.02(b)(1) & 19.03(a)(7)(A) (West 1995) *with* CR 12.  Further, Buck was aware that the prescribed maximum penalty for capital murder is death.  TEX. PENAL CODE §§ 12.31(a) & 19.03(b) (West 1995).  Finally, once Buck's trial proceeded to the punishment phase, the other two special issues were submitted to the jury according to Texas law and the jury was instructed that the State must prove these special issues beyond a reasonable doubt.  TEX. CODE CRIM. PROC. art. 37.071 § 2(b)(1) (West

1995); CR 193-201. Thus, again Texas law did not improperly attempt to bypass the Sixth Amendment rationale of *Apprendi* in determining Buck's guilt and his "death eligibility."

Furthermore, in the capital sentencing context, the Supreme Court has explained that death eligibility requires "that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Tuilaepa v. California,* 512 U.S. 967, 972 (1994). "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." *Id.* In *Ring,* the Court applied *Apprendi,* "which held that the Sixth Amendment does not permit a defendant to be 'expose[d] ... to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone,'" to Arizona's capital sentencing scheme. *Ring,* 536 U.S. at 588-89 (quoting *Apprendi,* 530 U.S. at 483) (emphasis in *Ring*). Therefore, Arizona's sentencing scheme was unconstitutional "to the extent that it allows a sentencing judge, sitting without a jury, to find an *aggravating circumstance* necessary for imposition of the death penalty." *Id.* at 609 (emphasis added).

However, Texas's mitigation special issue is not an element of the offense of capital murder nor is it an aggravating circumstance as defined by *Tuilaepa.* Rather, the mitigation issue gives the jury a chance to make an individualized determination of the offender's moral culpability, as this Court has repeatedly required. *Penry v. Johnson,* 532 U.S. 782, 797 (2001) ("*Penry II*"); *Penry v. Lynaugh,* 492 U.S. 302, 316-19 (1989) ("*Penry I*"); *Eddings v. Oklahoma,* 455 U.S. 104, 111-12 (1982); *Woodson v. North Carolina,* 428 U.S. 280, 303-

37

04 (1976).  Thus, the Supreme Court has explained that such a determination need not be structured in any particular way, as long as the jury is allowed to judge for itself what is mitigating and in what way.  *Franklin v. Lynaugh,* 487 U.S. 164, 179 (1988) (plurality opinion); *Mills v. Maryland,* 486 U.S. 367, 373-75 (1988); *Booth v. Maryland,* 482 U.S. 496, 502 (1987), *overruled on other grounds, Payne,* 501 U.S. at 829-30;  *Zant v. Stephens,* 462 U.S. 862, 875-76 (1983)  As such, the Texas mitigation special issue serves this constitutionally mandated function, instructing the jury to consider all of the evidence — the circumstances of the offense, the defendant's character and background, and the general moral culpability of the defendant — and that it need not agree on what evidence supports an affirmative answer.  TEX. CODE CRIM. PROC. art 37.071 § 2(e) & (f).  Thus, the mitigation issue confers upon the jury a broad ability to show leniency and *reduce* the defendant's sentence to life imprisonment.  *See Penry II,* 532 U.S. at 803 (approving the "brevity and clarity" of the current mitigation special issue as a catchall mitigation instruction).

Further, the *Apprendi* decision specifically noted and reaffirmed the distinction between "facts in aggravation of punishment and facts in mitigation."  530 U.S. at 490 n. 16. There, the Supreme Court reasoned that a judicial fact-finding which allows the defendant to "escape the statutory maximum" penalty attached to a jury verdict "neither expos[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to the statute, nor ... impos[es] upon the defendant a greater stigma than that accompanying the jury verdict alone."  *Id.*  The *Apprendi* Court thereby expressly noted that the Sixth

Amendment concerns animating its decision were absent in the context of mitigation.  *Id.*; *see also id.* at 501 (suggesting that "a 'crime' includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment)") (Thomas, J., concurring).

Finally, the portion of *Walton v. Arizona*, 497 U.S. 639, 649-51 (1990), left untouched by the majority in *Ring* is consistent with this distinction.  In part III of *Walton,* the Court stated that the Eighth Amendment did not bar a state from imposing a burden of proof *on the defendant* to "establish, by a preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency."  497 U.S. at 649-51.  The Supreme Court noted that nothing in its Eighth Amendment jurisprudence precluded the states from "specifying how mitigating circumstances are to be proved." *Id.* at 649.  Indeed, in several other capital cases, this Court found it constitutional for a state to impose a burden of proof on the defendant to prove issues such as self-defense, insanity, and extreme emotional disturbance.  *Id.* at 650 (citing *Martin v. Ohio,* 480 U.S. 228 (1987), *Leland v. Oregon,* 343 U.S. 790 (1952), *Rivera v. Delaware,* 429 U.S. 877 (1976), and *Patterson v. New York,* 432 U.S. 197 (1977)).

Therefore, the Texas mitigation special issue does not operate as "the functional equivalent of an element of a greater offense."  *Ring,* 536 U.S. at 609; *Apprendi,* 530 U.S. at 494.  Buck improperly attempts to construe the mitigation special issue as an aggravating factor by suggesting that the burden of proof is on the State.  Petition at 23.  Although it is

correct that a Texas capital sentencing jury must specifically answer the disputed issue in the negative to render a death sentence, the function of that special issue is plainly meant to inure to the defendant's benefit by allowing the jury a mechanism to give effect to the defendant's mitigating evidence.[13]

Finally, as the Supreme Court explained in *Penry I,* "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." 492 U.S. at 319. Thus, the definition of "mitigating" depends on what a "disadvantaged background" is, what emotional or mental problems consist of, and most importantly who is "less culpable." Indeed, the Court of Criminal Appeals has clearly, and correctly, rejected the idea that any evidence could be *per se* mitigating. *McFarland v. State,* 928 S.W.2d 482, 498 (Tex. Crim. App. 1996). The court explained that, "unlike a particular offense or defense ... which contains specific elements that must be met, ... the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror." *Id.*; *see also Colella v. State,* 915 S.W.2d 834, 844 (Tex. Crim. App. 1995) ("The amount of

---

[13]    Buck's entire argument turns on the fact that the Texas sentencing scheme creates a default sentence of life imprisonment if the jury does not answer the mitigation special issue in the negative. But by this logic, the Texas sentencing scheme would be valid under the Sixth Amendment if the statute required a default sentence of *death* after the jury answered the future dangerousness special issue in the affirmative. It is, without a doubt, highly peculiar that a capital offender would seek such an additional obstacle when the Texas Legislature has plainly set up the current mitigation scheme to benefit him.

weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion' exercised by each juror") (quoting *Banda v. State,* 890 S.W.2d 42, 54 (Tex. Crim. App. 1994)).

In essence, accepting Buck's interpretation would punish the State of Texas for doing exactly as it was told to do in *Penry I* — allow the jury open-ended discretion to consider mitigating circumstances and impose a life sentence if appropriate to the defendant and the crime.  At the same time, the application of *Ring* and *Apprendi* to the Eighth Amendment context of mitigation would lead to impossible and absurd results by forcing the State to *objectively* refute fundamentally *subjective* moral considerations urged to a jury in defense of a man's life.  Buck's argument is untenable because the absence of mitigating circumstances is not an element of the crime or a sentencing aggravator that must be pled and proved by the State beyond a reasonable doubt.  Thus, the core Sixth Amendment principles of due process and fair notice recognized in *Ring* and *Apprendi* are not implicated here. Buck has failed to demonstrate a compelling claim for review.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests his motion for summary judgment be granted, that Buck's federal petition for writ of habeas corpus be denied with prejudice and that no certificate of appealability issue with regard to any of the claims raised in the instant federal habeas petition.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division


s/ Ellen Stewart-Klein
*ELLEN STEWART-KLEIN

*Attorney in Charge

Assistant Attorney General
State Bar No. 24028011
Southern District Bar No. 27861


P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 936-1600
Facsimile No. (512) 320-8132

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I, ELLEN STEWART-KLEIN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Respondent Dretke's Answer and Motion for Summary Judgment with Briefs in Support** has been served by placing same in the United States mail, postage prepaid, on this the 6th day of September, addressed to Petitioner as follows:

Stanley G. Schneider
440 Louisiana Street
Suite 2110
Houston, Texas 77002

s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General