IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 1 8 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| DUANE EDWARD BUCK, Petitioner | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:04-CV-03965 |
| JANIE COCKRELL, Director, Institutional Division Texas Department of Criminal Justice, Respondent | § § § § § § § | |

**Petitioner Response to Respondent Advisory**

Now comes Duane Buck, by and through his attorney Stanley G. Schneider and files this response to Respondent's "advisory" regarding the recent decision by the Fifth Circuit in *Granados v. Quaterman,* slip opinion 05-7009, 2006 U.S. App. Lexis 16828 (5th cir. July 5, 2006).

The State concedes that the decision in *Granados* is distinguishable from the instant case but stands by its position that Buck is not entitled relief. The important lesson learned from Saldano and its progeny, for which the Attorney General has conceded error in other cases, is that the State of Texas can not use the color of a person's skin or nationality in any shape, manner or form as an aggravating circumstance to support a death sentence. According to the Fifth Circuit's opinion in *Granados,* Dr. Quijano was called by the defense without ever examining the accused and presented his opinions and Granados attacked

1

counsel strategic decision to present Dr. Quijano and his opinions about race. The Fifth Circuit does not suggest that the State used Dr. Quijano's testimony to influence the jury to assess a death sentence.

In Buck's trial, Dr. Quijano examined Buck and testified that Buck had a dependent personality disorder characterized by an obsessive desire to maintain personal relationships even after they have ended. He concluded that Buck would be unlikely to develop any such dependant relationships in prison, as he would almost certainly not encounter any individuals from his "victim pool" there. Moreover, Buck's past disciplinary record in prison indicates that his adjustment to prison life would be satisfactory, making it improbable that he would engage in any assaultive behavior if confined again, particularly since inmates with long sentences are less likely to be rebellious than others. And because prisons have effective means of dealing with inmate misbehavior, only the most fractious inmates actually pose a continuing threat to prison society.

Dr. Quijano's professional assessment of Buck's future behavior was based on the premise that Buck, if not executed for his crime, would actually be confined in a penitentiary environment for a long period of time. Indeed, Quijano's opinion makes no sense at all otherwise. For this reason, Quijano expressed no opinion whatsoever regarding the probability of Petitioner's endangering free society.

In addition to his assessment of Buck, Dr. Quijano was asked to detail statistical factors which indicate whether convicted murderers will pose a continuing threat to society.

Dr. Quijano mentioned a number of circumstances, including race, and stated that "minorities, Hispanics and black people are over represented in the Criminal Justice System."

On cross examination, the prosecuting attorney revisited this issue, without objection from defense counsel, eliciting from Quijano the conclusion that "the race factor, black, increases the future dangerousness for various complicated reasons." During his closing argument, the prosecutor invited the jury to recall the testimony of Dr. Quijano, "who told you that there was a probability that the man would commit future acts of violence."

Thus, the State's cross examination of Dr. Quijano and its final arguments emphasized that because Buck was black he would be a future danger. Truly, Buck is factually distinguishable from the facts in *Granados* simply because of the State's own conduct in emphasizing Dr. Quijano's statistical analysis implicating race as an aggravating factor. In this case, the State is disingenuous to suggest that Buck is not entitled to relief based on the prosecutor's arguments and cross examination of Dr. Quijano. Since the Respondent adopted Quijano's race based opinion and argued its significance, this case should not be treated any differently than the other death penalty cases in which the Respondent conceded error based on the presentation of Quijano's race driven opinions. It is unconscionable that the State is arguing that Buck's death sentence be upheld even though it is supported by testimony and it's own jury argument that a person's race can be a factor for the jury's consideration to take a man's life.

This Court's opinion in *Broxton v. Johnson,* H-00-CV-1034, 2001 U.S. Dist. LEXIS

3

25715 (March 28, 2001) is factually indistinguishable to the instant case. Like Buck, Broxton contended that his constitutional rights were violated when the State interjected the issue of race into the future dangerousness special issue in the punishment phase. Specifically, Broxton points to the testimony of Dr. Walter Quijano, a psychologist who testified for the State. Dr. Quijano testified that race is one of twenty-four factors to be weighed in determining future dangerousness. Like Buck, Broxton argued that under *Zant v. Stephens,* 462 U.S. 862, 865, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983), the use of race as a factor for determining the imposition of the death penalty is constitutionally impermissible and irrelevant. Broxton asked this Court to set aside his death sentence. Unlike Buck, Broxton did not present this claim to the state courts and, thus, the claim was technically unexhausted. However, the Respondent, unlike the instant case, expressly waived exhaustion and procedural default regarding issues relating to Dr. Quijano. The only difference between Broxton's and Buck's case is that initially Dr. Quijano was called as a witness by Buck's lawyer.

In fact, Buck's case is much more egregious that Broxton's case in that the prosecutor's in Broxton did not ask any follow up questions once race was presented to the jury. In this case, the State embraced Quijano's opinion concerning race and argued it to the jury that Quijano's opinion supported a determination that Buck was a future danger and that the death sentence, the ultimate punishment should be imposed. The only fact that supported that argument was Dr. Quijano's race analysis. There is no difference between Buck's claim

4

and the claim upheld by this Court in Broxton's case..

As this Court noted in *Broxton*:

"Discrimination on the basis of race, odious in all respects, is especially pernicious in the administration of justice." *Rose v. Mitchell,* 443 U.S. 545, 555, 61 L. Ed. 2d 739, 99 S. Ct. 2993 (1979). "The Equal Protection Clause prohibits the state from using race in its decision-making, unless it can meet the most exacting scrutiny ... justified by a compelling government interest." *United States v. Webster,* 162 F.3d 308, 355 (5th Cir. 1998) (quotation omitted), *cert. denied,* 528 U.S. 829, 145 L. Ed. 2d 70, 120 S. Ct. 83 (1999). Respondent confesses error with regard to this claim and agrees [*15] that Broxton is entitled to a new sentencing hearing. The Court finds that the introduction of race as an factor to consider with respect to future dangerousness is constitutionally impermissible and totally irrelevant to Texas' special issues. The Court finds that the use of race in the punishment phase violated Broxton's constitutional rights. Due process of law requires that the jury's decision to impose death must be set aside. This Court provisionally grants the writ of habeas corpus on this claim and orders that a new sentencing hearing be held.

Clearly, whenever the State uses the color of a person's skin as an aggravating factor to support a death sentence, due process requires that a new punishment hearing be ordered.

Respectfully submitted,

SCHNEIDER & McKINNEY, P.C.

Stanley G. Schneider
T.B.C. No. 17790500
2110 Lyric Centre
440 Louisiana
Houston, Texas 77002
713-951-9994
FAX 713-224-6008

ATTORNEY FOR PETITIONER