IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUANE EDWARD BUCK, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-04-3965 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal | § | |
| Justice-Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |
| | § | |

<u>Memorandum and Order</u>

This case is before the Court on Petitioner Duane Edward Buck's Petition for Writ of

Habeas Corpus and Respondent Doug Dretke's Motion for Summary Judgment. Having

carefully considered the Petition, the Summary Judgment Motion, the evidence, and the

arguments and authorities submitted by counsel, the Court is of the opinion that Respondent's

Motion for Summary Judgment should be GRANTED, and Buck's Petition for Writ of

Habeas Corpus should be DENIED.

I.    Background[1]

During the early morning hours of July 30, 1995, Harold Ebenezer, his brother Kenneth Butler, Buck's sister Phyllis Taylor, and Debra Gardner all gathered at Gardner's house after a night out playing pool. Buck lived in the house with Gardner on and off over the previous few years, but Gardner and Buck broke up two or three weeks earlier.

Buck banged loudly on Gardner's door and Gardner called "911." Buck then forced the door open and entered the house. He argued with Gardner and struck her. Buck then stated that he was there to pick up his clothes. He retrieved a few things and left.

At about 7:00 a.m., Buck returned with a rifle and shotgun. Upon entering the house, he shot at Ebenezer but missed; Ebenezer fled the house. Buck then walked up to his sister, Taylor, put the muzzle of one of the guns against her chest, and shot her. Taylor survived.

After she was shot, Taylor heard more shots coming from the vicinity of the bedrooms. As she made her way through the house, Taylor saw Butler's body in the hallway. After escaping, Ebenezer also heard two or three more shots fired inside the house. As he came around to the front of the house, Ebenezer saw Gardner walking toward the street with Buck following her.

Devon Green, Gardner's son, hid in the closet after hearing the first shot fired. Shortly thereafter, he heard Buck's voice accusing Butler of sleeping with "his wife,"

---

[1]    The facts are adapted from the opinion of the Texas Court of Criminal Appeals ("TCCA") on Buck's direct appeal. *See Buck v. State*, No. 72,810 at 2-3 (Tex. Crim. App. Apr. 28, 1999). Any significant divergence from the TCCA statement of facts is noted with a specific citation to the record.

2

followed by another gunshot. After a short while, Green looked out into the hall and saw Butler leaning against the wall bleeding. Green then ran outside and saw Buck shoot his mother and put two guns in the trunk of his car. Gardner's teenage daughter, Shennel Gardner, also saw Butler in the hallway after he was shot and then went outside and saw Buck shoot her mother. Both Butler and Gardner died from their wounds.

When police arrived, both Green and Ebenezer identified Buck as the shooter. Police subsequently retrieved a shotgun and a .22 caliber rifle from the trunk of Buck's car.

During the penalty phase, the State presented evidence of Buck's prior convictions for delivery of cocaine and unlawfully carrying a weapon. 28 Tr. at 5-28.[2] Vivian Jackson, Buck's ex-girlfriend and the mother of Buck's son, testified that Buck physically abused her and threatened her with a gun. *Id.* at 30-36. One of the police officers who accompanied Buck after his arrest testified that Buck was laughing. When the officer commented that he did not think the situation was very funny, Buck responded: "The bitch deserved what she got." *Id.* at 62-70.

Buck presented evidence that he is a peaceful, nonviolent, person, that his mother died when he was 12 years old, that he worked as an auto mechanic, and that his father served several jail sentences for non-violent felonies. *Id.* at 76-100. The defense also called Dr. Walter Quijano, a clinical psychologist, as an expert witness. Dr. Quijano opined, based on his evaluation of Buck, that Buck has a dependent personality disorder. People suffering

---

[2]     "Tr." refers to the transcript of Buck's trial.

from this disorder can become obsessive about relationships and have a very difficult time letting go after a relationship ends.

Dr. Quijano also testified that several factors can be predictive of future dangerousness. These include, according to Dr. Quijano, past violent behavior, the age and sex of the defendant (with older defendants less likely to be violent in the future, and male defendants more likely than female defendants to be violent), socio-economic status, and history of substance abuse. Dr. Quijano also testified that race is a statistical predictor of future dangerousness based on the fact that Latinos and African-Americans are over-represented in the penal system. Applying these factors to Buck, Quijano testified that Buck's lack of a violent past made it less likely that he would be violent in the future. Based on his selection of victims (a former girlfriend) and his prison disciplinary record, Quijano concluded that he is unlikely to be violent in prison. *Id.* at 101-20.

Buck also called Dr. Patrick Gordon Lawrence, another clinical psychologist. Dr. Lawrence agreed that Buck has a dependent personality and that he poses a low probability of future violence. *Id.* at 177-206. The jury found that Buck posed a future danger to society, and that there was insufficient mitigating evidence to justify a sentence of life imprisonment. Accordingly, the trial court sentenced Buck to death. 29 Tr. at 278.

The TCCA affirmed Buck's conviction and sentence on April 28, 1999. *Buck v. State*, No. 72,810 (Tex. Crim. App. Apr. 28, 1999). On March 22, 1997, Buck filed a state habeas corpus petition. On December 13, 2002, he filed a successive state habeas application. SH.

4

at 2.[3]  On January 23, 2003, the trial court found that Buck's second petition was a subsequent habeas application and ordered the clerk to send it to the TCCA. *Id.* at 18-19. The trial court recommended denying Buck's original petition on July 23, 2003. SH. at 119-27. On October 15, 2003, the TCCA adopted the trial court's findings and recommendation and denied Buck's first application, and dismissed his second application as an abuse of the writ. *Ex Parte Buck* , Nos. 57,004-01, -02 (Tex. Crim. App. Oct. 15, 2003) (*per curiam*). On October 14, 2004 , Buck filed this timely federal petition for a writ of habeas corpus.

II.    The Applicable Legal Standards

A.    The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Kitchens v. Johnson*,190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in

---

[3]    "SH." refers to the transcript of Buck's state habeas corpus proceeding.

state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 406 (2000)).[4]

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Terry Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme

---

[4]     On April 18, 2000, the Supreme Court issued two separate opinions, both originating in Virginia, involving the AEDPA, and in which the petitioners had the same surname. *Terry Williams v. Taylor*, 529 U.S. 362 (2000), involves § 2254(d)(1), and *Michael Williams v. Taylor*, 529 U.S. 420 (2000), involves § 2254(e)(2). To avoid confusion, this Court will include the full name of the petitioner when citing to these two cases.

Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The State court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

7

B. <u>The Standard for Summary Judgment in Habeas Corpus Cases</u>

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases. In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). Where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, however, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir.), *cert. denied sub nom Foster v. Epps*, 537 U.S. 1054 (2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998). Consequently, where facts have been determined by the Texas state courts, this Court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

8

III. <u>Analysis</u>

Buck's petition raises eight claims for relief.  These are addressed in turn.

A.      <u>Informing The Jury About Parole Eligibility</u>

In his first claim for relief, Buck argues that the trial court violated his Fourteenth Amendment right to due process of law by refusing to inform, or allow Buck to inform, the jury of the law concerning Buck's parole eligibility if sentenced to life imprisonment.  Buck contends that this unfairly impeded his ability to rebut the State's argument that he posed a future danger to society.  In his second claim, Buck argues that this lack of information renders his sentence violative of the Eighth Amendment because it impeded his ability to offer mitigating evidence.  In his third claim, Buck argues that the trial court's refusal to permit testimony concerning parole eligibility violated Buck's rights under the compulsory process clause of the Sixth Amendment.

The crux these three claims is whether the fact that a life sentence would make Buck ineligible for parole until he served 40 years in prison was relevant to the issue of his future dangerousness.  He argues that his expert witnesses were not permitted to testify that this was a factor in their conclusions that he was not a future danger, and that his lawyers were also not permitted to inform the jury of this part of his experts' analysis.

Petitioner argues that his position is supported by the United States Supreme Court's decision in *Simmons v. South Carolina*, 512 U.S. 154 (1994).  At the time of Simmons' conviction, South Carolina allowed for a sentence of life in prison without the possibility of parole upon conviction of a capital offense.  In *Simmons*, the defense sought an instruction

9

informing the jury that life imprisonment would carry no possibility of parole, but the trial court refused. The Supreme Court held that when "the alternative sentence to death is life without parole . . . due process plainly requires that [the defendant] be allowed to bring [parole ineligibility] to the jury's attention by way of arguments by defense counsel or an instruction from the court." *Simmons*, 512 U.S. at 169 (citing *Gardner v. Florida*, 430 U.S. 349, 362 (1977)).

The *Simmons* court reasoned that when a state imposes the death penalty on the premise that the convicted individual poses a danger to society, the fact that the defendant may receive life without possibility of parole "will necessarily undercut the State's argument regarding the threat the defendant poses to society." *Simmons*, 512 U.S. at 169. To hold otherwise would create a "false dilemma by advancing generalized argument regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant will never be released on parole." *Id.* at 171.

*Simmons* addresses very specific circumstances: (1) When the state seeks the death penalty at least in part on the grounds that the defendant will be a future danger to society; and (2) when the alternative to a sentence of death is a sentence of life imprisonment without the possibility of parole.

> [I]f the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society. Because truthful information of parole ineligibility allows the defendant to deny or explain the showing of future dangerousness, due

10

> process plainly requires that he be allowed to bring it to the
> jury's attention by way of argument by defense counsel or an
> instruction from the court.

*Simmons*, 512 U.S. at 168-69 (internal quotation marks and citation omitted); *see also, Wheat*

*v. Johnson*, 238 F.3d 357, 361-62 (5th Cir.), *cert. denied*, 532 U.S. 1070 (2001).  While the

State did seek a death sentence in this case partially on the basis that Petitioner would pose

a continuing threat, the jury's alternative was a parole-eligible life sentence, not, as in

*Simmons*, life without parole.  *Id.* at 168 n.8.

The Fifth Circuit has repeatedly rejected Buck's claim.

> [T]he Supreme Court took great pains in its opinion in *Simmons*
> to distinguish states such as Texas, which does not provide
> capital sentencing juries with an option of life without parole,
> from the scheme in South Carolina which required an
> instruction on parole ineligibility . . . [T]he Fifth Circuit has
> repeatedly refused to extend the rule in *Simmons* beyond those
> situations in which a capital murder defendant is statutorily
> ineligible for parole.

*Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999);

*see also, Wheat*, 238 F.3d at 361-62 (5th Cir.), *cert. denied*, 532 U.S. 1070 (2001)(finding

*Simmons* inapplicable to the Texas sentencing scheme); *Soria v. Johnson*, 207 F.3d 232 (5th

Cir.), *cert. denied*, 530 U.S. 1286 (2000)(finding that "reliance on *Simmons* to demonstrate

that the Texas capital sentencing scheme denied [petitioner] a fair trial is unavailing"); *Miller*

*v. Johnson*, 200 F.3d 274, 290 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000) ("because Miller

would have been eligible for parole under Texas law if sentenced to life, we find his reliance

on *Simmons* unavailing")(internal quotation marks and citation omitted); *Hughes v. Johnson*,

11

191 F.3d 607, 617 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000); *Muniz v. Johnson*, 132

F.3d 214, 224 (5th Cir.), *cert. denied*, 523 U.S. 1113 (1998)(stating that a claim based on

*Simmons* "has no merit under the law in our circuit"); *Montoya v. Scott*, 65 F.3d 405, 416

(5th Cir. 1995), *cert. denied sub nom. Montoya v. Johnson*, 517 U.S. 1133 (1996) (holding

that *Simmons* claims are foreclosed by recent circuit authority rejecting an extension of

*Simmons* beyond situations in which a defendant is statutorily ineligible for parole");

*Allridge v. Scott*, 41 F.3d 213, 222(5th Cir. 1994), *cert. denied*, 514 U.S. 1108 (1995)(stating

that "*Simmons* is inapplicable to this case"); *Kinnamon v. Scott*, 40 F.3d 731, 733 (5th Cir.),

*cert. denied*, 513 U.S. 1054 (1994) (refusing to "extend *Simmons* beyond cases in which the

sentencing alternative to death is life without parole").

If these decisions left any doubt that *Simmons* provides no basis for the relief

Petitioner seeks, the Supreme Court removed all such doubt in *Ramdass v. Angelone*, 530

U.S. 156 (2000). "*Simmons* applies only to instances where, as a legal matter, there is no

possibility of parole if the jury decides the appropriate sentence is life in prison." *Id.* at 169.

In this case, life without parole was not a possibility. Petitioner faced one of two

sentences: Death, or life imprisonment with the possibility of parole at a future date.

Therefore, as *Ramdass* and Fifth Circuit precedent make unmistakably clear, Petitioner's

claims do not fall within the scope of *Simmons*.

Insofar as Petitioner seeks an extension of *Simmons* to the Texas scheme, this Court

is barred from granting habeas relief on that basis by the non-retroactivity principle of

*Teague v. Lane*, 489 U.S. 288 (1989). *See Wheat*, 238 F.3d at 361 (finding any extension

12

of *Simmons* to violate *Teague*); *Clark v. Johnson*, 227 F.3d 273, 282 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001)(same); *Boyd v. Johnson*, 167 F.3d 907, 912 (5ᵗʰ Cir.), *cert. denied*, 527 U.S. 1055 (1999) ("Relief based on *Simmons* is foreclosed by *Teague*."). In *Teague*, the Supreme Court held that a federal court may not create new constitutional rules of criminal procedure on habeas review. *Id.* at 301. Thus, even if controlling precedent did not expressly hold that the *Simmons* rule does not cover Petitioner's case, relief would be barred by *Teague*.

Buck also argues, citing *Skipper v. South Carolina*, 476 U.S. 1 (1986), that information about parole eligibility is relevant mitigating evidence because it "might serve as a basis for a sentence less than death." *Id.* at 4. He therefore contends that the trial court's refusal to allow Buck to inform the jury about parole eligibility violates his Eighth Amendment right to present mitigating evidence. The Fifth Circuit, however, has consistently found that the Eighth Amendment does not require that a jury be informed of parole eligibility. *See Tigner v. Cockrell*, 264 F.3d 521, 525 (5th Cir. 2001). Therefore, Petitioner's motion for relief on his first through third claims is DENIED.

B.    Ineffective Assistance Of Counsel

Buck argues that the evidence supported a finding that he acted under the immediate influence of sudden passion arising from an adequate cause when he committed the murders. In his fourth claim for relief, Buck argues that his trial counsel rendered ineffective assistance by failing to request a lesser included offense instruction based on this theory.

To prevail on a claim for ineffective assistance of counsel, Petitioner

13

> must show that . . . counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed by the Sixth
> Amendment.   Second, the [petitioner] must show that the
> deficient performance prejudiced the defense.   This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail on the first prong

of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below

an objective standard of reasonableness.  *Id.* at 687-88.  Reasonableness is measured against

prevailing professional norms, and must be viewed under the totality of the circumstances.

*Id.* at 688.  Review of counsel's performance is deferential.  *Id.* at 689.

Buck committed the murders on July 30, 1995.  The Texas statute defining a homicide

committed under the influence of sudden passion as the lesser included offense of voluntary

manslaughter was repealed on September 1, 1994.  *See* Acts 1993, 73rd Leg., ch. 900, § 1.01.

Where the prior version of the statute defined manslaughter as a homicide committed under

the influence of sudden passion, the amended version, which was in effect at the time of

Buck's crime, defines manslaughter as "recklessly caus[ing] the death of the individual."

Tex. Penal § 19.04.  Therefore, Texas law did not provide for the lesser included offense on

which Buck now claims he was entitled to a jury instruction.  Indeed, petitioner admits that

this statutory definition of voluntary manslaughter existed only "[p]rior to September of 1994

. . . ." Pet. at 47.

Counsel's failure to request a jury instruction unsupported by the law did not

constitute deficient performance.  "Counsel cannot be deficient for failing to press a frivolous

14

point." *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Therefore, petitioner fails to meet the first prong of the *Strickland* test and his petition for relief on this claim is DENIED.

C.     Evidence Of Future Dangerousness Based On Race

Petitioner's fifth and sixth claims for relief relate to testimony offered during the penalty phase by Dr. Walter Quijano, who testified as an expert witness. Buck's counsel asked Dr. Quijano to discuss certain statistical factors relevant to determining whether a defendant poses a future threat to commit criminal acts of violence. Among the factors Dr. Quijano discussed was race. Dr. Quijano testified that "minorities, Hispanics and black people are over represented in our Criminal Justice System." 28 Tr. at 111. The prosecutor revisited this topic on cross-examination. Buck is African-American.

In his Fifth claim for relief, Buck argues that Dr. Quijano's reliance on race as a statistical predictor of future dangerousness, and the prosecutor's references to this testimony on cross-examination and in closing argument, violated Buck's Sixth and Fourteenth Amendment rights to an impartial jury, due process, and equal protection of the law. In his Sixth claim for relief, Buck contends his counsel rendered ineffective assistance by eliciting this testimony from Dr. Quijano.

Buck concedes that he did not raise these claims either in his direct appeal or on his original state habeas corpus application, though he did raise them in his successive state habeas application. As noted above, the TCCA dismissed the successive petition as an abuse

of the writ.

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

To be "adequate" to support the judgment, the state law ground must be both "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.) (per curiam), *cert. denied*, 515 U.S. 1153 (1995). Therefore, this claim is procedurally defaulted and this Court may not review the claim unless Buck demonstrates cause and prejudice, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

16

"Cause" for a procedural default requires a showing that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule, or a showing of a prior determination of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 222 (1988). Buck does not argue that cause exists for his default.

A "miscarriage of justice" means actual innocence, either of the crime for which he was convicted or of the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992). "Actual innocence of the death penalty" means that, but for a constitutional error, Buck would not have been legally eligible for a sentence of death. *Id.*

To show actual innocence,

> [T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986).

The penalty phase evidence showed that Buck had a history of domestic violence, including threatening his ex-girlfriend with a gun, shot his own sister during the rampage that resulted in the murders of Gardner and Butler, showed no remorse for the murders, and laughed when asked about the murders. This evidence was sufficient for the jury to conclude that Buck posed a future danger. Therefore, petitioner has not established that, but-for the allegedly improper testimony, he could not, as a matter of law, be sentenced to death.

17

Because Buck fails to establish either cause for his procedural default nor actual innocence of the death penalty, this Court may not review his Fifth and Sixth claims for relief.

### D. Burden Of Proof On Future Dangerousness

In his Seventh claim for relief, Buck argues that the future dangerousness special issue violates the rules of *Ring v. Arizona*, 536 U.S. 584 (2002) and *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004). Specifically, Buck argues that the language of the statutory special issue, requiring the jury to determine whether there is a "probability" of future dangerousness, has the practical effect of reducing the burden of proof from "beyond a reasonable doubt" to a mere preponderance of the evidence, notwithstanding a specific statutory requirement of proof beyond a reasonable doubt.

Buck never presented these claims in state court. The AEDPA requires that a prisoner exhaust his available State remedies before raising a claim in a federal habeas petition.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). As the Fifth Circuit explained in a pre-AEDPA case, "federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v.*

*Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *see* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . .").

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state forum to present his unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). Such a result in this case, however, would be futile because Petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law. A procedural bar for federal habeas review occurs if the court to which a petitioner must present his claims to satisfy the exhaustion requirement would now find the unexhausted claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. Tex.CodeCrim.Proc.Ann. art. 11.071 § 5(a) (Vernon Supp. 2002). The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the

19

> United States Constitution no rational juror could have found
> the applicant guilty beyond a reasonable doubt.

*Id.*

Petitioner does not claim that he could not have presented the claim in one of his previous state habeas petitions because the factual basis for the claim did not exist, or that he is actually innocent. *Ring* was decided on June 22, 2002, and Buck did not file his successive state habeas petition until December 13, 2002. Therefore, Petitioner could have raised this claim in his prior successive state petition, and the unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts. *Coleman*, 501 U.S. at 735 n.1.[5] That bar precludes this Court from reviewing Petitioner's claim absent a showing of cause for the default and actual prejudice attributable to the default, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Id.* at 750. Buck offers no argument that cause exists to excuse his default, or that he is actually innocent. Therefore, this Court cannot review his seventh claim.

E.    Burden Of Proof On Lack Of Mitigation

The Texas capital sentencing statute requires the jury, after deciding that the defendant poses a future danger, to determine whether the defendant's mitigating evidence

---

[5]    Buck also cites *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004). While *Blakely* was not decided until after the TCCA dismissed both of Buck's state petitions, Buck does not argue that *Blakely* recognized any new substantive right concerning the burden of proof on aggravating factors. Rather, Buck merely argues that "*Blakely* confirms the foregoing *Ring* analysis." Pet. at 64.

is sufficient to justify imposing a sentence of life imprisonment rather than death. Tex. Code

Crim. Pro. art. 37.071(2)(e)(1). In his Eighth and final claim for relief, Buck argues that the

Texas capital sentencing statute violates the rules of *Apprendi v. New Jersey*, 530 U.S. 466

(2000) and *Blakely* because it does not place the burden on the prosecution to prove that the

mitigating evidence is insufficient to justify a life sentence.

    *Apprendi* itself rejects Buck's position.

> Finally, the principal dissent ignores the distinction the Court
> has often recognized, *see, e.g., Martin v. Ohio*, 480 U.S. 228,
> 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), between facts in
> aggravation of punishment and facts in mitigation. . . . If facts
> found by a jury support a guilty verdict of murder, the judge is
> authorized by that jury verdict to sentence the defendant to the
> maximum sentence provided by the murder statute. If the
> defendant can escape the statutory maximum by showing, for
> example, that he is a war veteran, then a judge that finds the fact
> of veteran status is neither exposing the defendant to a
> deprivation of liberty greater than that authorized by the verdict
> according to statute, nor is the judge imposing upon the
> defendant a greater stigma than that accompanying the jury
> verdict alone. Core concerns animating the jury and
> burden-of-proof requirements are thus absent from such a
> scheme.

*Apprendi*, 530 U.S. at 491 n.16. The Supreme Court has thus drawn a critical distinction

between aggravating and mitigating circumstances in sentencing proceedings. To the extent

that some aggravating circumstance is required before the court may exceed an otherwise-

prescribed sentencing range, the state must prove those aggravating circumstances beyond

a reasonable doubt. Under the Texas capital sentencing statute, the statutory maximum

sentence in the absence of proof of aggravating circumstances is life imprisonment. A court

cannot sentence a defendant to death unless the State proves beyond a reasonable doubt that there is a probability that the defendant will commit future acts of violence constituting a continuing threat to society. Tex.Crim.Pro. art. 37.071(2)(b)(1). Once the State has proven this factor, the defendant may be sentenced to death.

The sentencing scheme, however, gives a defendant another opportunity to show that death should not be imposed, even though the State has met its burden of proof. The mitigation special issue is, in this sense, analogous to an affirmative defense. *Apprendi* does not prohibit placing the burden of proof on this special issue on the defendant. The mitigation special issue does not address a factor necessary to increase the maximum sentence; rather, it addresses factors that allow the jury to impose a sentence *less than* the statutory maximum. Therefore, the mitigation special issue does not fall within the scope of *Apprendi*, and Buck is not entitled to relief on this claim.

IV. Evidentiary Hearing

Buck requests an evidentiary hearing. An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' to avoid unneeded hearings in federal habeas corpus"); *Robison v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases.

Each of Petitioner's claims can be resolved by reference to the state court record, the

submissions of the parties, and relevant legal authority. There is, therefore, no basis upon which to hold an evidentiary hearing on these claims.

V.    Certificate of Appealability

Buck has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings. *See Alexander v. Johnson*, 211 F.3d 895, 898(5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve

encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.),

*cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The nature of the penalty in a capital case

is a 'proper consideration in determining whether to issue a [COA], but the severity of the

penalty does not in itself suffice to warrant the automatic issuing of a certificate.'"

*Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996), *cert. denied*, 520 U.S. 1122 (1997)

(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). However, "the determination of

whether a COA should issue must be made by viewing the petitioner's arguments through

the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*,

221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully and exhaustively considered each of Buck's claims. While

the issues Buck raises are clearly important and deserving of the closest scrutiny, the Court

finds that each of the claims is foreclosed by clear, binding precedent. This Court concludes

that under such precedents, Buck has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court concludes that Buck is not entitled to a certificate of appealability on his claims.

VI.     Order

For the foregoing reasons, it is ORDERED as follows:

1.      Respondent Doug Dretke's Motion for Summary Judgment (Docket Entry 7) is GRANTED;

2.      Petitioner Duane Edward Buck's Petition For Writ Of Habeas Corpus (Docket Entry 1) is DENIED; and

3.      No Certificate of Appealability shall issue in this case.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 24th day of July , 2006.

Vanessa Gilmore
United States District Judge