IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DUANE EDWARD BUCK**, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:04-cv-03965 |
| | § | ***CAPITAL CASE*** |
| **RICK THALER**, Director, | § | |
| Correctional Institutions Division, | § | |
| Texas Department of Criminal | § | |
| Justice, | § | |
| | § | |
| Respondent. | § | |
| | § | |

### MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

On June 9, 2000, the Attorney General of Texas issued a statement identifying Petitioner Duane Buck, and five others, as persons whose death sentences had been obtained in violation of the Equal Protection Clause.[1] After conceding error in the case of Victor Saldaño because the prosecution had relied on the testimony of a witness whose prediction of future dangerousness was based in part on Mr. Saldaño's race, Texas's highest legal officer declared it "inappropriate to allow race to be considered as a factor in our criminal justice system" and promised

---

[1] News Release, Office of the Attorney General, Texas Attorney General John Cornyn offers the following information on capital cases that involved Dr. Walter Quijano's testimony using race as a factor to determine future dangerousness (June 9, 2000) (attached as Exhibit 1).

to "continue to do everything [he could] to assure Texans of [the Office of the Attorney General's] commitment to an equitable criminal justice system."[2]

At the time these statements were made, Mr. Buck's case, alone among the six identified, was still pending in state habeas corpus proceedings. The Attorney General was aware that some cases were "probably with district attorney offices," and guaranteed, "if and when those cases reach this office they will be handled in a similar manner as the Saldano case."[3] In each of the five other cases, the Attorney General waived procedural default and exhaustion requirements. In each of the other five cases, the Attorney General conceded constitutional error due to the government's reliance on race as a consideration for the death sentence. And in each of the other five cases, the petitioner was granted a new sentencing trial free from consideration of his race.

Despite the Attorney General's assurances, Mr. Buck is currently scheduled to be executed by the State of Texas on September 15, 2011. Like the other five men identified in the Attorney General's June 2000 press release, Mr. Buck's death sentence is based, at least in part, on his race. Indeed, at Mr. Buck's trial, the government elicited testimony from an expert who opined that being black was a factor that increased the likelihood of being dangerous in the future. Despite promising that it would treat Mr. Buck the same way it  treated the five other similarly-situated cases identified by the Attorney General, the State has to date refused to do so. This failure to act as promised and to subject Mr. Buck to disparate

[2] *Id.*

[3] *Id.*

treatment warrants this Court's intervention. Accordingly, Mr. Buck requests relief from judgment pursuant to FED. R. CIV. P. 60(b)(6) or, alternatively, Rule 60(d)(3). Mr. Buck further requests oral argument.

## I.   RELIEF FROM THE COURT'S JUDGMENT UNDER FED. R. CIV. P. 60(B)(6) IS APPROPRIATE TO ACCOMPLISH JUSTICE.

"[Federal] Rule [of Procedure] 60(b) enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation." 12-60 Moore's Federal Practice - Civil § 60.02 [hereinafter Moore's Federal Practice]. The rule provides relief from a "final judgment, order, or proceeding" in certain enumerated circumstances. Subsection (6) provides that a Rule 60(b) motion be granted for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6); *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005); *United States v. Hurst*, 2011 U.S. App. LEXIS 10835, 3-4 (5th Cir. 2011) ("Under Rule 60(b)(6), in extraordinary circumstances, the district court may relieve a party from an order or proceeding for ***any reason that justifies relief***.") (emphasis added).

Rule 60(b) authority to reopen proceedings and reconsider a denial of a petition for writ of habeas corpus is equitable and subject to the Court's discretion. *See Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("Rule 60(b)(6) is a ***grand reservoir of equitable power*** to do justice in a particular case when relief is not warranted by the preceding clauses…") (emphasis added). To demonstrate "any other reason justifying relief" under Rule 60(b)(6), a petitioner must show "extraordinary circumstances." *See Gonzalez*, 545 U.S. at 536.

The Fifth Circuit has delineated eight factors "that should inform the district court's consideration of a motion under Rule 60(b)," including: (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments. *Seven Elves v. Eskanazi*, 635 F.2d 396, 402 (5th Cir. 1981) (citing *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962)). These factors strongly weigh in favor of granting the relief Mr. Buck requests. Moreover, because Mr. Buck's death sentence rests in part on considerations of race, and because the Attorney General represented that it would not contest a new sentencing trial for Mr. Buck, the State of Texas can have no legitimate interest in the finality of this sentence.

### A. Extraordinary Circumstances Warrant Relief From the Judgment.

4

During Mr. Buck's capital trial, Dr. Walter Quijano was called by the defense and testified that he did not believe Mr. Buck would be a future danger based on several factors, primarily that Mr. Buck had no violent criminal record and did not display violent tendencies. On cross-examination, the government elicited testimony from Dr. Quijano that blacks are more likely to commit future acts of violence:

Q:     You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that ***the race factor, black increases the future dangerousness for various complicated reasons; is that correct?***

A:     Yes.

*See* Exhibit 2 (Excerpt of Dr. Quijano's testimony) (emphasis added). The government urged the jury in its closing argument to rely on Dr. Quijano's testimony. *See* Exhibit 3 (Excerpt of State's closing argument). The jury found that Mr. Buck would be a future danger, and he was sentenced to death.

On direct appeal, the Texas Court of Criminal Appeals (CCA) upheld Mr. Buck's death sentence. The reliance by the government on Mr. Buck's race as a factor increasing his future dangerousness was not raised as a ground of error. Mr. Buck filed a state habeas application on March 15, 1997, alleging constitutional violations relating to the judge's refusal to admit evidence regarding parole. The reliance by the government on Mr. Buck's race as a factor increasing the likelihood of future danger was not raised as a claim for relief in this application.

On June 5, 2000, the Supreme Court granted certiorari in *Saldaño v. Texas*, No. 99–8119, vacated the Texas Court of Criminal Appeals's judgment affirming Saldaño's capital murder conviction, and remanded for further consideration in

light of a concession of constitutional error made in the case by then-Attorney General John Cornyn. In *Saldaño*, the government called psychologist Walter Quijano as an expert in the sentencing phase of Mr. Saldaño's capital trial and elicited testimony about "identifying markers" that help psychologists determine whether there is a probability a defendant will present a threat of violence in the future. One of the factors that Dr. Quijano identified as relevant to a determination of future dangerousness is the defendant's race or ethnicity. After the Texas Court of Criminal Appeals affirmed his conviction, Mr. Saldaño filed a petition for writ of *certiorari* in the Supreme Court asking the Court to decide the question of "[w]hether a defendant's race or ethnic background may ever be used as an aggravating circumstance in the punishment phase of a capital murder trial in which the State seeks the death penalty." *Saldano v. State*, No. 72,556 (Tex. Crim. App. 2002).

On behalf of the State of Texas, the Attorney General filed a response to the petition for writ of *certiorari* admitting constitutional error had occurred. Quoting *Rose v. Mitchell*, the Attorney General observed that "[d]iscrimination on the basis of race, odious in all respects, is especially pernicious in the administration of justice."[4] The Attorney General argued that the "infusion of race as a factor for the jury to weigh in making its determination violated [Saldaño's] constitutional right to be sentenced without regard to the color of his skin."[5]

---

[4] Response to Petition for Writ of *Certiorari* at 7, *Saldaño v. State*, No. 99-8119 (attached as Exhibit 4).

[5] *Id.* at 8.

6

Four days after the Supreme Court granted *certiorari* in *Saldaño*, the Attorney General issued a press release in which he identified Mr. Buck's and five others then pending in post-conviction proceedings as cases in which the prosecution had unconstitutionally relied on testimony of psychologist Walter Quijano, that a defendant's race should be considered in determining future dangerousness and, at least in Mr. Buck's case, that being black was a factor that increased the likelihood of future dangerousness:

> After a thorough audit of cases in our office, we have identified eight more cases in which testimony was offered by Dr. Quijano that race should be a factor for the jury to consider in making its determination about the sentence in a capital murder trial. ***Six of these eight cases are similar to that of Victor Hugo Saldano.***[6]

One of those six cases was Mr. Buck's. The Attorney General concluded that "[t]wo of these eight cases are dissimilar to the Saldano case. In one, the defendant is not a member of a racial group included in Dr. Quijano's statistical model. In the other, the prosecution did not introduce race as a factor."[7] The two cases deemed dissimilar to Saldaño's and Buck's by the Attorney General were Michael Blair and Anthony Graves.   (Michael Blair and Anthony Graves were both subsequently exonerated and released from prison.)

---

[6] News Release, Office of the Attorney General, Statement from Attorney General John Cornyn regarding death penalty cases (June 9, 2000) (emphasis added) (attached as Exhibit 5).

[7] News Release, Office of the Attorney General, Texas Attorney General John Cornyn offers the following information on capital cases that involved Dr. Walter Quijano's testimony using race as a factor to determine future dangerousness (June 9, 2000) (attached as Exhibit 1).

The Attorney General said Texas would not contest equal protection and due process claims in federal court in the six cases, including Mr. Buck's, which it identified as similarly situated to Saldaño's: "[I]f the attorneys [for the six identified defendants] amend their appeals currently pending in federal court to include objections to Quijano's testimony, the attorney general will not object."[8] "As I explained in a filing before the United States Supreme Court...it is inappropriate to allow race to be considered as a factor in our criminal justice system," the Attorney General wrote.[9] "[T]he United States Supreme Court agreed. The people of Texas want and deserve a system that affords the same fairness to everyone."[10] Although Mr. Buck's case was not then pending in federal court, the Attorney General promised that Texas would "continue to vigilantly monitor all death-penalty cases."[11] "Our goal is to assure the people of Texas that our criminal justice system is fairly administered."[12] The Attorney General acknowledged that some cases

[8] James Kimberly, *Death penalties of 6 in jeopardy: Attorney general gives result of prove into race testimony*, HOU. CHRON., June 10, 2000 at A1 (attached as Exhibit 6).

[9] News Release, Office of the Attorney General, Statement from Attorney General John Cornyn regarding death penalty cases (June 9, 2000) (attached as Exhibit 5).

[10] *Id.*

[11] *Id.*

[12] Steve Lash, *Texas death case set aside: U.S. Supreme Court sees possible racial bias*, HOU. CHRON., June 6, 2000 at A1 (attached as Exhibit 7).

might still be in state proceedings and guaranteed, "if and when those cases reach this office they will be handled in a similar manner as the Saldano case."[13]

Mr. Buck's case was still in state habeas proceedings at the time of the Attorney General's June 2000 statement. It was the only case identified by the Attorney General as containing constitutional error not yet in federal court. In Texas, the district attorney of the county of conviction represents the State during state post-conviction proceedings. Charles Rosenthal was the district attorney of Harris County both at the time of Mr. Buck's trial and during the post-conviction proceedings.[14]

The six cases in which the Attorney General's thorough audit discovered equal protection violations were those of Gustavo Garcia, Eugene Broxton, John Alba, Michael Gonzales, Carl Blue, and Duane Buck.  In all six cases, the State relied on the impermissible and unconstitutional testimony of Dr. Quijano in asking the jury to sentence the defendant to death.  In three of the cases, the prosecution originally called Dr. Quijano as a witness; in three others, including Mr. Buck's, the

---

[13] James Kimberly, Death penalties of 6 in jeopardy: Attorney general gives result of prove into race testimony, HOU. CHRON., June 10, 2000 at A1 (attached as Exhibit 6)

[14] Mr. Rosenthal's administration was mired in scandal following the disclosure of emails—as part of a federal lawsuit—that showed that he "sent and received racist jokes…on his county e-mail account." Brian Rogers, et al., More e-mails emerge in Harris County DA scandal; County GOP says Chuck Rosenthal should resign, HOU. CHRON., January 9, 2008.

Following calls from Black community leaders for Mr. Rosenthal to resign, Houston City Councilwoman Jolanda "Jo" Jones said the emails "confirmed what she and others [had] suspected about the DA's office for years. 'It's systemic, the racism there.'" Leslie Casimir, Blacks urge Rosenthal to quit, HOU. CHRON., January 12, 2008.

defense called Dr. Quijano, and the unconstitutional testimony was elicited by the prosecution on cross-examination.[15]

Carl Blue's habeas corpus petition was already pending in the Houston Division of the United States District Court for the Southern District of Texas at the time the Attorney General identified his case as containing constitutional error. Mr. Blue had not raised an equal protection or due process claim in state or federal court at that time. Despite this, the Attorney General waived the exhaustion requirement and all procedural defenses (including the statute of limitations) and conceded that Dr. Quijano's testimony violated equal protection and required a new sentencing hearing.[16] On September 29, 2000, District Court Judge Kenneth Hoyt granted Mr. Blue a new sentencing hearing because "Quijano's testimony...where he declares that race is a predictor of future dangerousness, was clearly unconstitutional" and "[n]either the trial court nor the prosecutor sought to correct this wrong."[17]

John Alba's federal habeas petition had already been denied by the federal district court at the time the Attorney General identified his case as having been obtained in violation of the Equal Protection Clause. The Attorney General

---

[15] The other two cases like Mr. Buck's were the cases of Carl Blue and John Alba. *See* Memorandum Opinion and Order at 15-16, *Blue v. Johnson*, No. 4:99-cv-00350, slip op. at 16 (S.D. Tex. Sep. 29, 2000) (attached as Exhibit 8).

[16] Memorandum Opinion and Order at 17, *Blue v. Johnson*, No. 4:99-cv-00350, slip op. at 16 (S.D. Tex. Sep. 29, 2000) (attached as Exhibit 8); Response to Supplemental Petition and Confession of Error, *Garcia v. Johnson*, No. 1:99-cv-00134 (E.D. Tex. Aug. 18, 2000).

[17] Memorandum Opinion and Order at 17, *Blue v. Johnson*, No. 4:99-cv-00350, slip op. at 16 (S.D. Tex. Sep. 29, 2000) (attached as Exhibit 8).

therefore confessed error in that case to the United States Court of Appeals for the Fifth Circuit. That court vacated the district court's denial and remanded the case back to the district court with instructions to grant the petition.[18] District Court Judge Paul Brown granted resentencing on September 25, 2000.[19]

In the cases of Eugene Broxton, Michael Gonzales, and Gustavo Garcia, Dr. Quijano was called to the stand by the prosecution. All three cases were pending in federal district court when Attorney General Cornyn identified them as cases warranting new sentencing hearings. At the time, none had raised a claim alleging equal protection or due process violations based on the State's reliance on race as a factor increasing the likelihood of future dangerousness. As in *Blue*, the Attorney General permitted all three to file "supplemental" habeas corpus petitions, waived all procedural defenses, and conceded error.

District Court Judge Thad Heartfield granted Mr. Garcia a new hearing on September 7, 2000 in a short order that cited the Attorney General's concession.[20] Mr. Broxton, whose case originated from Harris County like Mr. Buck's, was granted a new sentencing hearing on March 28, 2001, when District Court Judge

---

[18] *Alba v. Johnson*, No. 00-40194 (5th Cir. Aug. 21, 2000).

[19] Order, *Alba v. Johnson*, No. 4:98-cv-221 (E.D. Tex. Sept. 25, 2000) (attached as Exhibit 9). As previously mentioned, the Attorney General identified two cases that it concluded did not contain constitutional violations. Those cases were Michael Blair and Anthony Graves. The Attorney General distinguished *Blair* because Mr. Blair was not a member of a racial group that Dr. Quijano testified increased the risk of future dangerousness. In *Graves*, the government did not introduce race as a factor.

[20] Order, *Garcia v. Johnson*, No. 1:99-cv-00134 (E.D. Tex. Sep. 7, 2000) (attached as Exhibit 10).

Vanessa Gilmore found the introduction of race by the government "constitutionally impermissible and totally irrelevant to Texas' special issues."[21] Mr. Gonzales was granted a new sentencing hearing on December 19, 2002 by District Court Judge Royal Ferguson, based on the Attorney General's concession and the "inexcusable nature of the testimony."[22]

In 2002, while Mr. Buck's state habeas application continued to pend, his state habeas counsel, Robin Norris, filed a subsequent application raising equal protection and due process claims based on the government's reliance on race during Mr. Buck's capital sentencing proceeding. On October 15, 2003, the Court of Criminal Appeals denied the initial application and dismissed the subsequent application raising Mr. Buck's equal protection and due process claims as an abuse of the writ. Order, *Ex parte Buck*, No. WR-57,004-02 (Tex. Crim. App. Oct. 15, 2003).

Mr. Buck, represented by different counsel, filed his federal habeas corpus petition on October 14, 2004. Fulfilling the request of the Attorney General, Mr. Buck raised his equal protection and due process claims in that petition. But the Attorney General did not waive the procedural defenses available to it as it had stated that it would. Instead, the Attorney General invoked them, asserting that the Texas court's dismissal of Mr. Buck's equal protection and due process claims

---

[21] Order at 10-11, *Broxton v. Johnson*, No. 4:00-cv-01034 (S.D. Tex. Mar. 28, 2001) (attached as Exhibit 11).

[22] Order Granting Respondent's Partial Summary Judgment and Recognizing Respondent's Notice of Error Allowing Petitioner a New Sentencing Hearing to Determine if a Life or Death Sentence Should Be Imposed in This Case, *Gonzales v. Johnson*, No. 7:99-cv-00072 (W.D. Tex. Dec. 19, 2002) (attached as Exhibit 12).

caused a procedural default. Answer, at 17. It also, falsely and misleadingly, told this Court that Mr. Buck's case was different from all the others; according to the pleadings filed by the Attorney General in this case, Mr. Buck's circumstances "present[ed] a strikingly different scenario than that presented in Saldano—Buck himself, not the State offered Dr. Quijano's testimony into evidence. Based on this critical distinction, the Director deems himself compelled to assert the valid procedural bar precluding merits review of Buck's constitutional claims. And on this basis, federal habeas relief should be denied." *Id*. The Attorney General's position before this Court was false and misleading in several respects. First, the Attorney General had already explicitly identified Mr. Buck's case as being similar to Saldaño's and therefore warranting similar relief. Second, despite the insinuation that the Attorney General was not conceding error in cases where Dr. Quijano had originally been called as a witness by the defense, three of the six cases identified by the Attorney General as warranting relief (i.e., Mr. Buck's case and two others), were cases in which the defense had called Dr. Quijano; the Attorney General's basis for conceding error in these cases was that, even though Dr. Quijano was called by the defense, the unconstitutional testimony was elicited on cross-examination, and it was the prosecution that asked the jury to rely on the defendant's race to sentence him to death.  Third, the Attorney General waived all procedural defenses in each of the other five cases, although procedural defenses were available in them all. Fourth, the Attorney General said nothing about the fact that it had explicitly warranted that it would concede error and waive any

procedural defenses available once Mr. Buck raised the equal protection and due process claims in federal habeas proceedings.

This Court denied relief based on the Attorney General's assertion of procedural default, finding the claim barred because the state court had dismissed it as an abuse of the writ. Memorandum and Order, No. H-04-3965 (S.D. Tex. July 24, 2006). As a result, of all the cases identified by Texas's highest legal officer as having equal protection violations, Mr. Buck's was the only one not to have been granted a sentencing trial free from considerations of his race, despite Texas's explicit promise to so provide.[23] Moreover, the ostensible justification proffered by the Attorney General before this Court for this disparate treatment is, as stated above, manifestly misleading if not altogether false.   These extraordinary circumstances require that relief from Mr. Buck's judgment be granted in the interests of justice. Mr. Buck has been twice-subjected to equal protection violations: first when Texas asked the jury to sentence Mr. Buck to death on the basis of testimony asserting that his race made him more likely to commit violence in the future, and second when the Attorney General identified Mr. Buck's case as

---

[23] In 2001, the Texas Legislature amended the Texas Code of Criminal Procedure to expressly forbid the State from introducing evidence that a defendant's race makes it more likely that he will constitute a continuing threat to society. *See* Acts 2001, 77th Leg., ch. 585 (amending Tex. Code Crim. Proc. art. 37.071 to provide that "...evidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that the defendant will engage in future criminal conduct.").

similar to Saldaño's, thus warranting relief, and then subsequently treated him disparately without any rational basis.[24]

### B. This Motion Is Not a Successive Petition.

The successive petition requirements in 28 U.S.C. § 2244(b) only apply to "applications" for habeas corpus. *See Gonzalez*, 545 U.S. at 530. An "application" within the meaning of § 2244(b) is "a filing that contains one or more *claims*." *Id.* (internal quotation marks omitted and emphasis added). A Rule 60(b) motion brings a prohibited claim when it: (1) adds a new ground for relief or (2) attacks the federal court's prior resolution of the claim on the merits. *Id.* at 530-32. Mr. Buck's motion meets the *Gonzalez* criteria because it asks the Court to reopen a judgment applying a procedural default to his claim.

## II. ALTERNATIVELY, RELIEF IS APPROPRIATE TO CORRECT A FRAUD ON THE COURT UNDER FED. R. CIV. P. 60(D)(3).

Federal Rule of Civil Procedure 60(d)(3) provides that Rule 60 does not limit a federal court's power to set aside a judgment for fraud on the court. Fraud on the court is a fraud that "seriously affects the integrity of the normal process of adjudication." Moore's Federal Practice § 60.21. *See also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on court "is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"). It is "limited to fraud ... that is perpetrated by officers of the court 'so that the

---

[24] Mr. Buck does not assert the second equal protection violation as a substantive claim for habeas corpus relief. He mentions it only to emphasize the extraordinary nature of the circumstances warranting relief from the judgment.

judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'" Moore's Federal Practice § 60.21 (citing *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982)).

Cases dealing with fraud on the court often turn on whether the improper actions are those of parties alone, or if the attorneys in the case are involved. *Demjanjuk v. Petrovsky*, 10 F. 3d 338, 352 (6th Cir. 1993). "As an officer of the court, every attorney has a duty to be completely honest in conducting litigation." *Id*. When the party is the government, acting through its duly authorized counsel, "the distinction between client and attorney actions becomes meaningless." *Id*. In such cases, no scheme based on a subjective intent to commit fraud is required; "**[r]eckless disregard for the truth is sufficient**" to constitute fraud on the court. *Id*. at 353 (emphasis added).

If the court does not grant relief under FED. R. CIV. P. 60(b)(6), the Court should hold that the Attorney General's misrepresentations before this Court constitute a fraud on the court and justify relief from the judgment denying Mr. Buck's equal protection and due process claims as procedurally defaulted. *See Hazel-Atlas Glass Co.* at 244-45 ("where the occasion has demanded, where enforcement of the judgment is 'manifestly unconscionable,' [federal courts] have wielded the power [to grant relief from judgments] without hesitation") (internal citations omitted) (citing and quoting *Pickford v. Talbott*, 225 U.S. 651, 657 (1912)).

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Mr. Buck requests that the Court grant his motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6) and permit further briefing on the merits of his equal protection and due process claims. Alternatively, the Court should grant relief pursuant to Fed. R. Civ. P. 60(d)(3). Should this Court wish to consider additional argument, Mr. Buck request oral argument.

Respectfully submitted,

s/ David R. Dow
_____
**David R. Dow**
Texas Bar No. 06064900
ddow@texasdefender.org
**Katherine C. Black**
Texas Bar No. 24064907
kateblack@texasdefender.org
TEXAS DEFENDER SERVICE
1927 Blodgett Street
Houston, Texas 77004
Tel. (713) 222-7788
Fax (713) 222-0260

## CERTIFICATE OF SERVICE

I certify that on Wednesday, September 7, 2011, a copy of the foregoing pleading was electronically served on counsel for Respondent by filing the document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.

Georgette Oden
Edward Marshall
Office of the Texas Attorney General
Post Office Box 12548
Austin, Texas 78711

s/ David R. Dow
_____
David R. Dow

17

## CERTIFICATE OF CONFERENCE

I certify that on Tuesday, September 6, 2011, I attempted to confer with counsel for Respondent in a good faith attempt to resolve the matter without court intervention and received no response.

s/ David R. Dow

_____

David R. Dow

18