IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DUANE EDWARD BUCK, | § § § |
| Petitioner, | § § |
| v. | §  H-04-3965 |
| | § |
| WILLIAM STEPHENS, Director, Texas Department of Criminal Justice-Correctional Institutions Division, | § § § § |
| | § |
| Respondent. | § § |

## MEMORANDUM AND ORDER

Pending is petitioner's motion for relief from judgment (Inst. # 49). Petitioner seeks relief from the judgment of this Court entered on July 24, 2006 (Inst. # 16).

Duane Edward Buck is currently incarcerated on death row in Texas. On July 24, 2006, this Court denied his petition for a writ of habeas corpus. Among the claims denied were Buck's claims that he received ineffective assistance of counsel when his counsel called as an expert witness Dr. Walter Quijano, who mentioned an issue relating to race during the penalty phase of Buck's trial. Buck further contended that counsel was ineffective for failing to object when the prosecutor asked Dr. Quijano a question raising a racial issue on cross-examination. This Court found that those claims were procedurally defaulted, and the Fifth Circuit denied Buck's request for a certificate of appealability. *See Buck v. Thaler*, 345 Fed. App'x 923 (5th Cir., 2009).

1

In 2012, the Supreme Court issued its decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), holding that ineffective assistance of state habeas counsel could, in certain circumstances, constitute cause to excuse a procedural default of an ineffective assistance of trial counsel claim. In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the Supreme Court held that *Martinez* is applicable to the Texas capital postconviction process. On January 7, 2014, Buck, relying on *Martinez* and *Trevino*, filed the current motion for relief from the judgment of this Court under Rule 60(b)(6) of the Federal Rules of Civil Procedure (Inst. # 49).

I.   Background

The facts are not in dispute. During the early morning hours of July 30, 1995, Harold Ebenezer, his brother Kenneth Butler, Buck's sister Phyllis Taylor, and Debra Gardner all gathered at Gardner's house after a night out playing pool. Buck lived in the house with Gardner on and off over the previous few years, but Gardner and Buck broke up two or three weeks earlier.

Buck banged loudly on Gardner's door and Gardner called "911." Buck then forced the door open and entered the house. He argued with Gardner and struck her. Buck then stated that he was there to pick up his clothes. He retrieved a few things and left.

At about 7:00 a.m., Buck returned with a rifle and shotgun. Upon entering the house, he shot at Ebenezer but missed. Ebenezer fled the house. Buck then walked up to his sister, Taylor, put the muzzle of one of the guns against her chest, and shot her. Taylor survived.

After she was shot, Taylor heard more shots coming from the vicinity of the bedrooms. As she made her way through the house, Taylor saw Butler's body in the hallway. After escaping, Ebenezer also heard two or three more shots fired inside the house. As he came around to the front of the house, Ebenezer saw Gardner walking toward the street with Buck following her.

Devon Green, Gardner's son, hid in the closet after hearing the first shot fired. Shortly thereafter, he heard Buck's voice accusing Butler of sleeping with "his wife," followed by another gunshot. After a short while, Green looked out into the hall and saw Butler leaning against the wall bleeding. Green then ran outside and saw Buck shoot his mother and put two guns in the trunk of his car. Gardner's teenage daughter, Shennel Gardner, also saw Butler in the hallway after he was shot and then went outside and saw Buck shoot her mother. Both Butler and Gardner died from their wounds.

When police arrived, both Green and Ebenezer identified Buck as the shooter. Police subsequently retrieved a shotgun and a .22 caliber rifle from the trunk of Buck's car.

The case was tried to a jury. The jury found Buck guilty of capital murder at the conclusion of the guilt-innocence phase of the trial.

During the penalty phase, the State presented evidence of Buck's prior convictions for delivery of cocaine and unlawfully carrying a weapon. Vivian Jackson, Buck's ex-girlfriend and the mother of Buck's son, testified that Buck physically abused her and threatened her with a gun. One of the police officers who accompanied Buck after his arrest

testified that Buck was laughing. When the officer commented that he did not think the situation was very funny, Buck responded: "The bitch deserved what she got."

Buck presented evidence that he is a peaceful, nonviolent, person, that his mother died when he was 12 years old, that he worked as an auto mechanic, and that his father served several jail sentences for non-violent felonies. The defense also called Dr. Walter Quijano, a clinical psychologist, as an expert witness. Dr. Quijano opined, based on his evaluation of Buck, that Buck has a dependent personality disorder. People suffering from this disorder can become obsessive about relationships and have a very difficult time letting go after a relationship ends.

Dr. Quijano also testified that several factors can be predictive of future dangerousness. These include, according to Dr. Quijano, past violent behavior, the age and sex of the defendant (with older defendants less likely to be violent in the future, and male defendants more likely than female defendants to be violent), socio-economic status, and history of substance abuse. Dr. Quijano also testified that Latinos and African-Americans are over-represented in the penal system. Applying these factors to Buck, Quijano testified that Buck's lack of a violent past made it less likely that he would be violent in the future. Based on his selection of victims (a former girlfriend) and his prison disciplinary record, Quijano concluded that he is unlikely to be violent in prison.

Buck also called Dr. Patrick Gordon Lawrence, another clinical psychologist. Dr. Lawrence agreed that Buck has a dependent personality and that he poses a low probability

4

of future violence. The jury found that Buck posed a future danger to society, and that there was insufficient mitigating evidence to justify a sentence of life imprisonment. Accordingly, the trial court sentenced Buck to death.

The Texas Court of Criminal Appeals ("TCCA") affirmed Buck's conviction and sentence on April 28, 1999. *Buck v. State*, No. 72,810 (Tex. Crim. App. Apr. 28, 1999). On March 22, 1997, Buck filed a state habeas corpus petition. On December 13, 2002, he filed a successive state habeas application. On January 23, 2003, the trial court found that Buck's second petition was a subsequent habeas application and ordered the clerk to send it to the TCCA. The trial court recommended denying Buck's original petition on July 23, 2003. On October 15, 2003, the TCCA adopted the trial court's findings and recommendation and denied Buck's first application, and dismissed his second application as an abuse of the writ. *Ex Parte Buck*, Nos. 57,004-01, -02 (Tex. Crim. App. Oct. 15, 2003) (*per curiam*).

On October 14, 2004, Buck filed his federal petition for a writ of habeas corpus. This Court denied his petition on July 24, 2006, the Fifth Circuit denied Buck's request for a certificate of appealability, *Buck v. Thaler*, No. 06-70035 (5th Cir. Sept. 25, 2009), and the Supreme Court denied his petition for a writ of *certiorari, Buck v. Thaler*, 130 S.Ct. 2096 (2010).

On September 7, 2011, Buck filed a motion for relief from this Court's judgment. This Court denied that motion on September 9, 2011 (Inst. # 31). On September 12, 2011, Buck filed a motion to alter or amend the judgment denying his motion for relief from the

judgment. This Court denied that motion on the same day (Inst. # 36). The Fifth Circuit denied Buck's request for a certificate of appealability on September 14, 2011. *Buck v. Thaler*, 452 Fed. App'x 423 (5th Cir. 2011). The Supreme Court denied Buck's petition for a writ of *certiorari* on November 7, 2011. *Buck v. Thaler*, 132 S.Ct. 32 (2011).

The Supreme Court decided *Martinez* in 2012, and *Trevino* in 2013. On January 7, 2014, Buck filed this Rule 60(b) motion.

II.   Analysis

In this renewed motion for relief from the judgment, Buck argues that his trial counsel rendered ineffective assistance by calling Dr. Quijano to testify. Buck's counsel asked Dr. Quijano to discuss certain statistical factors relevant to determining whether a defendant poses a future threat to commit criminal acts of violence. Among the factors Dr. Quijano discussed on direct examination was race. Dr. Quijano testified that "minorities, Hispanics and black people are over represented in our Criminal Justice System." The prosecutor asked an additional race related question on cross-examination. Buck is African-American.

In his habeas petition, Buck argued that Dr. Quijano's reliance on race as a statistical predictor of future dangerousness, and the prosecutor's reference to this testimony on cross-examination, invited the jury to consider his race as a predictor of future dangerousness. He also argues that his counsel rendered ineffective assistance by eliciting this race related testimony from Dr. Quijano, and that counsel was ineffective for failing to object when the prosecutor asked a question about this testimony during Quijano's cross examination.

6

Buck notes that the Texas Attorney General conceded error in several other cases involving similar testimony by the same witness. He contends that the Attorney General also stated that he would not assert procedural defenses to such claims in federal court, but asserted such a defense in this case.

Buck conceded that he did not raise these claims either in his direct appeal or in his original state habeas corpus application, though he did raise them in his successive state habeas application. The TCCA dismissed the successive petition as an abuse of the writ. This Court therefore had no choice but to find the claims procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

This Court also discussed whether Buck could avoid the procedural default by showing that he is "actually innocent of the death penalty," *i.e.*, but for a constitutional error, he would not have been legally eligible for a sentence of death, *see Sawyer v. Whitley*, 505 U.S. 333, 335 (1992). The penalty phase evidence showed that Buck had a history of domestic violence, including threatening his ex-girlfriend with a gun, shot his own sister during the rampage that resulted in the murders of Gardner and Butler, murdered Gardner in front of her children, showed no remorse for the murders, and laughed when asked about the murders. The Court found that the evidence presented was sufficient for the jury to conclude that Buck posed a future danger and was therefore eligible for a sentence of death.

A. Rule 60(b)

Rule 60(b)(6) provides for relief from a judgment for "any . . . reason that justifies relief." This Court can consider the motion if it "attacks, not the substance of the federal court's resolution [of Buck's habeas corpus petition] on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Relief under Rule 60(b) is available only if the case presents "extraordinary circumstances." *Id.* at 536.

Generally speaking, a "change in decisional law after entry of judgment does not constitute extraordinary circumstances" and is not alone a ground for relief from a final judgment under Rule 60(b)(6). *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) (internal quotation marks and citation omitted). *Adams* specifically rejected the argument that *Martinez*, standing alone, constitutes "extraordinary circumstances" justifying relief under Rule 60(b)(6). *Id.* at 320. Buck argues that his case does present extraordinary circumstances because of the nature of Quijano's testimony, the fact that the claims have never been addressed on the merits by a reviewing court due to procedural bars, and the Texas Attorney General's decision not to raise procedural defenses in cases that Buck claims are similar.

As previously addressed in this Court's memorandum and order denying Buck's petition, Quijano's testimony on direct examination in this case noted the fact that African-Americans and Latinos are over-represented in the penal system. On cross examination,

8

Quijano answered "yes" when asked: "You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that the race factor, black, increases the future dangerousness for various complicated reasons; is that correct?" 28 Tr. at 160. Buck challenged this testimony solicited on cross examination, but the Fifth Circuit has previously rejected his claim that his case is similarly situated to the other cases in which Quijano testified.

> Citing a line of cases in which Texas has conceded error and waived procedural default after the *prosecution* had introduced Dr. Quijano as an expert witness during the penalty phase, Buck contends that notions of "intra-court comity" compel us to conclude that the State must also waive procedural default in the instant case. Buck's case, however, differs markedly from, e.g., *Saldano v. Roach*, [363 F.3d 545 (5th Cir. 2004),] in which the prosecution introduced Dr. Quijano as an expert witness and then proceeded to question him as to how the defendant's race might serve as a predictor of future dangerousness. In *Saldano*, the State conceded its error and waived any procedural bar that otherwise might have precluded our review of the defendant's claim on the merits. Here, in contrast, the State has not conceded any error or waived its procedural bar. Rather, the State has consistently maintained that it did not violate Buck's constitutional rights merely by questioning Buck's own witness – without objection from Buck – on the very same issues first discussed by that witness during direct examination by the defense, a classic example of the defense "opening the door" for the prosecutor to pursue the subject. Because Buck's characterization of "intra-court comity" finds no support in our precedent, we decline to apply here concessions made by the State in a different case with different facts. Such a broad expansion of a party's case-specific concession would not only contravene our precedent, but would also discourage the State from conceding error when it seeks to correct its own mistakes – both of which are clearly undesirable results.

*Buck v. Thaler*, 345 Fed. App'x 923, 929 (5th Cir. 2009) (footnotes omitted). The Fifth Circuit has found that Buck's case is different in critical respects from the cases in which Texas confessed error.

Finally, Buck's argument that this Court should grant relief because no court has yet reviewed the merits of his ineffective assistance of counsel claims is circular. Procedural bars prevent courts from reviewing claims on the merits. Buck's claim is procedurally defaulted. Therefore, the claim has not been reviewed on the merits. Buck suggests that the fact that the claims are defaulted should constitute extraordinary circumstances excusing the default. Other than citing *Martinez*, however, Buck has failed to demonstrate that this case presents extraordinary circumstances. While the introduction of any mention of race was ill-advised at best and repugnant at worst, it was, in this case, *de minimis*. As respondent points out, there were two references to race in Dr. Quijano's testimony. On direct examination, Quijano stated the indisputable fact that African-Americans and Latinos are over-represented in the criminal justice system. On cross examination, Dr. Quijano answered affirmatively when questioned about earlier findings he had made that being black is one statistical factor he considered in reaching his conclusion. The prosecutor did not make any race-based argument in closing. Moreover, the State's confession of error in other cases does not create any legally enforceable rights, nor does equity demand that the confession of error be extended to Buck's case for the reasons stated by the Fifth Circuit and quoted above. Finally, the fact that his claims have not been reviewed on the merits is a result of the fact that they

10

were procedurally defaulted. If that constituted "extraordinary circumstances," then the change in decisional law represented by *Martinez*, would, by itself, provide grounds for relief under Rule 60(b). As noted above, both the Supreme Court and the Fifth Circuit have held otherwise. *See Gonzalez*, 545 U.S. at 531-32; *Adams*, 679 F.3d at 319.

B.    <u>Ineffective Assistance of Counsel</u>

Assuming without finding that Buck has demonstrated that his case presented "extraordinary circumstances," he would not be entitled to relief on the merits of his claim. In *Martinez*, the Supreme Court carved out a narrow equitable exception to the rule that a federal habeas court cannot consider a procedurally defaulted claim of ineffective assistance of counsel.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 . . . (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez v. Ryan*, 132 S.Ct. 1309, 1318-19 (2012).

To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* at 688. Review of counsel's performance is deferential. *Id.* at 689.

In the context of a capital sentencing proceeding, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 465 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

During the penalty phase, the State presented evidence of Buck's prior convictions for delivery of cocaine, possession of a controlled substance, and unlawfully carrying a weapon. 28 Tr. at 5-28, 239-43. The State also presented testimony from Buck's former girlfriend recounting acts of domestic violence, including one instance in which Buck threatened her with a gun. *Id.* at 31-40.

In addition to Buck's past history, the jury was aware of the horrific facts of Buck's murder of Gardner and Butler. These included Buck's attempt to murder his own sister, and his murder of Gardner in front of her two children. The jury also heard that Buck was

laughing about the murders when he was arrested, and that he said about Gardner that "the bitch deserved what she got." *Id.* at 50-51.

Buck called several witnesses who knew him and testified that he was not violent. *See* 28 tr. at 77, 84-85, 96. He also called two expert witnesses: Dr. Quijano and Dr. Patrick Lawrence. Quijano was the former chief psychologist for TDCJ, *id.* at 101-02, and Lawrence was a psychologist specializing in prediction of future criminal behavior, *id.* at 177, 182-85.

Buck's counsel offered testimony that Quijano was neutral, emphasizing his experience working for TDCJ, *id.* at 101-04, and eliciting the fact that Quijano had testified for both defendants and the State in the past. *Id.* at 104-05. Quijano offered his opinion that Buck was not a future danger. *Id.* at 115. He based his conclusion, in part, on "several statistical factors . . . including, but not limited to age, sex, race, social economics, history of violence, and history of substance abuse." *Buck v. Thaler*, 345 Fed. App'x at 925. Included in Quijano's testimony was his observation that African-Americans and Latinos are over-represented in the criminal justice system. 28 Tr. at 111.

Nevertheless, the Court finds that counsel's representation fell below an objective standard of reasonableness under the first prong of *Strickland*. *See Strickland*, 466 U.S. at 687-88. Buck's trial counsel called Dr. Quijano as a witness even though he knew that Dr. Quijano had previously testified on the direct correlation between race and future dangerousness. Additionally, Buck's counsel had received Dr. Quijano's expert report before trial clearly stating that Buck's race made him statistically more likely to be a future danger.

*Buck v. Thaler*, __ U.S. __ 132 S. Ct. 32, 33 (2011). Despite the longstanding "'unceasing efforts' to eradicate racial prejudice from our criminal justice system," *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987), Buck's counsel called Dr. Quijano as a witness and relied on his expert report, although counsel was fully aware of Dr. Quijano's inflammatory opinions about race. There was no strategic reason to do so because Buck's counsel offered a second expert at trial, Dr. Lawrence, who had no history of this kind of troubling race-based testimony. Testimony like that of Dr. Quijano lends credence to any potential latent racial prejudice held by the jury. *Cf. Guerra v. Collins*, 916 F. Supp. 620, 636 (S.D. Tex. 1995), *aff'd sub nom. Guerra v. Johnson*, 90 F.3d 1075 (5th Cir. 1996) (holding that a defendant is "entitled to have his punishment assessed by the jury based on consideration of the mitigating and aggravating circumstances concerning his personal actions and intentions, not those of a group of people with whom he shared a characteristic."). Buck's counsel recklessly exposed his client to the risks of racial prejudice and introduced testimony that was contrary to his client's interests. His performance fell below an objective standard of reasonableness, and the Court therefore finds that trial counsel's performance was constitutionally deficient.

However, the Court finds that under the facts of this case, Buck cannot show that he was prejudiced by his counsel's constitutionally deficient action. In light of the aggravating evidence, particularly the facts of the crime and Buck's actions following the murders, it cannot be said that there is a reasonable probability that the outcome would have been different if Quijano had made no reference to race. Although counsel rendered deficient

performance by calling Quijano as a witness, Buck suffered no *Strickland* prejudice as a result. Therefore, the Court finds that Petitioner has not established a claim of ineffective assistance of trial counsel on this issue.

Buck also contends that his counsel was ineffective for failing to object when the State asked Quijano a question about the issue of Buck's race. As the Fifth Circuit noted, Buck opened the door to this question. *See Buck v. Thaler*, 345 Fed. App'x at 930. Because Buck opened the door, any objection to the prosecutor's question would have been futile. "This Court has made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Counsel was not ineffective for failing to make a futile objection.

Assuming without deciding, however, that the prosecutor's question amounted to constitutional error, Buck cannot prove prejudice. As previously discussed, the evidence showed that Buck had a prior criminal history and was violent toward his ex-girlfriend. He committed a brutal double murder, killing one of the victims in front of her two young children, and shot his own sister in the chest. Under these facts, there is no reasonable probability that the outcome of the sentencing phase would have been different if counsel objected to the prosecutor's question.

C. Certificate of Appealability

Although Buck has not requested a certificate of appealability ("COA"), the court may nevertheless determine whether he is entitled to this relief in light of the court's rulings. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997). A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213

F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court concludes that Buck has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and that jurists of reason would not find it debatable whether this court is correct in its procedural determinations. Therefore, Buck is not entitled to a COA.

D. Conclusion

For the foregoing reasons, Buck's renewed motion for relief from the judgment (Inst. # 49) is denied.

III. Order

For the foregoing reasons, IT IS ORDERED THAT Buck's Motion For Relief From Judgment (Docket Entry 49) is **Denied**; and

IT IS FURTHER ORDERED THAT no certificate of appealability shall issue.

SO ORDERED.

SIGNED at Houston, Texas, on this 29th day of August, 2014.

_____
VANESSA GILMORE
United States District Judge